[No. B189153. Second Dist., Div. Seven. Dec. 19, 2007.]

WILLDAN, Cross-complainant and Appellant, v.
SIALIC CONTRACTORS CORPORATION, Cross-defendant and
Respondent.

### Counsel

Horvitz & Levy, Karen M. Bray, Bradley S. Pauley; Murtaugh Meyer Nelson & Treglia, Michael J. Murtaugh, Michelle R. Mokri and John R. Armstrong III for Cross-complainant and Appellant.

Kring & Chung, Kyle D. Kring and June Yang Cutter for Cross-defendant and Respondent.

OPINION

**PERLUSS, P. J.**—Willdan, an engineering consulting firm owned by Willdan Group, Inc., appeals following dismissal of its indemnity and declaratory relief claims against Sialic Contractors Corporation, doing business as Shawnan, and from an order granting Shawnan's motion for attorney fees.[1] We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Improvement of Santa Monica Boulevard*

In 1997 the City acquired the three-mile stretch of Santa Monica Boulevard located within its city limits from the California Department of Transportation. After the acquisition the City decided to completely refurbish the boulevard, which had fallen into disrepair, including removal and replacement of the roadway, construction of sidewalks and traffic medians and installation of new traffic signals and extensive landscaping. The City retained Willdan, which had previously done work for the City, to, among other things, design the roadway, prepare the construction documents for the street improvements and provide construction management services. The City contracted with other consultants as well, including Associated Soils Engineering, Inc. (Associated Soils), to test construction materials. The City retained Shawnan as the general contractor; its bid of $20,236,000 was the lowest responsible and responsive bid. The project, including design and construction, ultimately cost approximately $30 million.

### 2. *The Dispute Between the City and Shawnan over Increased Construction Costs; the Settlement Agreement*

During construction, which primarily took place between 1999 and 2001, several serious problems caused projected construction costs to increase by more than $6 million. In particular, the railroad tracks located under a portion of the boulevard proved not to be a single set of tracks buried in the earthen median, as reflected on the plans and specifications prepared by Willdan, but two sets of tracks buried under the asphalt roadway, requiring a far more difficult removal process, further complicated by the need to keep traffic flowing. Additional difficulties included an approximately two foot grade

---

[1] Initially Willdan also appealed from the adverse judgment entered in the City of West Hollywood's (City) lawsuit against Willdan for negligent design and construction management services. Willdan and the City settled while this appeal was pending, and Willdan dismissed its appeal as to the City on March 19, 2007.

differential at the boulevard's western end, which was not reflected on the construction documents and which required the use of additional asphalt to level the road's surface.

Shawnan submitted claims to the City for the increased construction costs, which the City disputed. After two months of extensive meetings, the City and Shawnan agreed to mediate their dispute. Willdan participated in the first mediation session as an advocate on behalf of the City, but was instructed not to return to further sessions. The City and Shawnan ultimately agreed to a settlement, and a settlement agreement was executed in July 2002 by the City and Willdan, on one hand, and Shawnan, on the other. In exchange for a payment of $2.8 million, Shawnan agreed to release all claims against the City and Willdan with respect to the project, except for claims arising out of enforcement of the settlement agreement, breach of warranties and latent defects. The City and Willdan agreed to release Shawnan from any liability for the same claims. The settlement agreement specifically provided it would not "govern, affect or adjust claims as may exist between" the City and Willdan.[2]

### 3. *The City's Complaint Against Willdan; Willdan's Cross-complaint*

On November 21, 2003 the City filed an action against Willdan for breach of contract, express contractual indemnity, implied contractual indemnity and

---

[2] Paragraph 4.2 of the settlement agreement, "Releases and Dismissals," provides, "Upon receipt in full by SHAWNAN of the consideration and/or settlement payment described in paragraph 4.1 above, SHAWNAN shall release and forever dismiss, discharge, covenant not to sue for any and all claims, demands, actions, obligations, liabilities and causes of action which are based on tort, contract, equity or other theory, whether asserted or unasserted, or any kind in nature and character whatsoever, known or unknown, suspected or unsuspected, which it has or may have now or in the future (other than claims arising out of the enforcement of this agreement, breach of warranties and latent defects) against the CITY and WILLDAN arising out of or relating in any way to the Subject Project. [¶] Upon receipt in full by SHAWNAN of the consideration and/or settlement payment described in paragraph 4.1 above, the CITY and WILLDAN shall release and forever dismiss, discharge, covenant not to sue for any and all claims, demands, actions, obligations, liabilities and causes of action which are based on tort, contract, equity or other theory, whether asserted or unasserted, or any kind in nature and character whatsoever, known or unknown, suspected or unsuspected, which it has or may have now or in the future (other than claims arising out of the enforcement of this agreement, breach of warranties and latent defects) against SHAWNAN arising out of or relating in any way to the Subject Project. [¶] It is the intention of the CITY and WILLDAN, on the one hand, and SHAWNAN, on the other hand to fully and finally settle, release, acquit and forever discharge and covenant not to sue each other for any and all claims, including without limitation, any and all claims or causes of action of any nature and kind arising out of or related to the Subject Project. The parties represent and warrant that they have filed no legal actions, suits or similar proceedings against each other, and further, that this agreement may be pled as a full and complete defense to any such action or proceeding as well as a basis for abatement of, or injunction against, such action or other proceeding. Nothing herein shall constitute a release of claims as between the CITY and WILLDAN."

negligence. The City alleged, among other things, Willdan had improperly designed the roadway, prepared inaccurate plans, specified improper material and quantities of material, failed to observe and ensure compliance with the plans and specifications and authorized payment for materials and work that were not provided or called for by the plans and specifications. The City sought damages in excess of $13.8 million, including more than $11 million to redo the allegedly defective roadway and sidewalks.

On December 23, 2003 Willdan filed a cross-complaint against the City for breach of contract and against Associated Soils and other project consultants for indemnity and declaratory relief. On January 11, 2005 Willdan amended its cross-complaint to name Shawnan as a cross-defendant and to allege claims against it for indemnity and declaratory relief. According to a declaration filed by Willdan's attorney in support of Willdan's ex parte application for a motion to deem the case complex,[3] Willdan sought leave to amend its cross-complaint after testing and analysis performed on Santa Monica Boulevard led it to believe "that the conditions on [Santa Monica Boulevard were] not caused by a deep seated structural failure as plaintiff claims but instead a material deficiency. The material was placed by non-party general contractor Shawnan and tested by cross-defendant Associated Soils. [¶] . . . Prior to these destructive tests, there was no claim or allegation that the condition on [Santa Monica Boulevard] was related to or caused by a material failure or deficiency, but was purely design related."

### 4. The Trial Court's Granting of Shawnan's Motion for Determination of Good Faith Settlement

On August 29, 2005, approximately three weeks before trial was scheduled to begin, Shawnan moved for a determination pursuant to Code of Civil Procedure sections 877 and 877.6[4] that the 2002 settlement agreement was a good faith settlement between Shawnan and the City, thus precluding Willdan's indemnity and declaratory relief claims. Although the dispute between the City and Shawnan had initially concerned Shawnan's claim for $6 million in change orders and increased construction costs, apparently during mediation the City raised a number of construction defect issues, and the settlement agreement purportedly resolved those claims as well. According to the declaration filed by Shawnan's president, Shawn Smith, in support of Shawnan's motion for a good faith settlement determination, "Prior to and during the mediation process [the City] made claims and allegations concern-

---

[3] The application to classify the action as complex was denied.

[4] Statutory references are to the Code of Civil Procedure.

ing the design, specifications, materials and construction of, among other things, the sidewalks, tree beds, landscape and irrigation, curbs and gutters and the asphalt roadway." Willdan opposed the motion in part on the ground its claims against Shawnan were for latent defects in the roadway, which were expressly excepted from the release of claims contained in the settlement agreement.

On the first day of trial the court granted Shawnan's motion and dismissed Willdan's claims. In response to Willdan's inquiry whether "we have determined that the deficient asphalt issues are within the scope of that settlement agreement," the court stated, "Counsel, the court has made a determination on everything that was submitted that—it includes everything that is related to Sial[i]c and Shawnan. They're out of the case."[5]

The trial court subsequently determined Shawnan was the prevailing party and awarded it attorney fees of $214,713 plus costs of $20,216 pursuant to the settlement agreement's attorney fee provision, which states, "In the event of litigation or arbitration relating to this agreement, the prevailing party/parties shall be entitled to recover reasonable attorneys' fees and costs."

### 5. The Jury's Verdict in Favor of the City

The case proceeded to trial between the City and Willdan. The City sought more than $8.6 million in damages for negligent pavement design, based on two breaches of the standard of care: The City argued Willdan (a) utilized an insufficient traffic index—a measurement used to determine how strong pavement must be to last for the industry-standard period of 20 years—as the basis for the pavement design and (b) specified use of an experimental asphalt mixture that had never been used in California without informing the City of its novelty. The City also sought damages of approximately $1.6 million for negligent construction supervision on grounds including Willdan's failure to discover the actual location of the railroad tracks caused the City to incur greater costs for removal than it otherwise would have.

The jury returned a general verdict in favor of the City for $5,621,421.53 and found against Willdan on its cross-complaint against the City.

### CONTENTIONS

Willdan contends the trial court erred in dismissing its cross-complaint for indemnity and declaratory relief against Shawnan because the settlement

---

[5] We denied Willdan's writ petition challenging the trial court's order finding a good faith settlement. Willdan's petition for review by the Supreme Court was also denied.

agreement between Shawnan, on the one hand, and the City of West Hollywood and Willdan, on the other hand, expressly excluded claims related to latent defects and, in any event, because Shawnan failed to satisfy its burden of establishing the settlement had been entered in good faith within the meaning of section 877 and 877.6.

## DISCUSSION

1. *The Trial Court Erred in Dismissing Willdan's Claims Against Shawnan Because They Were Based on a Theory of Latent Defects Expressly Excepted from the Settlement Agreement*

A settlement made in good faith under sections 877 and 877.6 bars claims against the settling defendant for contribution or indemnity by other joint tortfeasors, including claims for total indemnity, partial indemnity and implied contractual indemnity. (*Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1032 [269 Cal.Rptr. 720, 791 P.2d 290] ["good faith settlement bars a claim for implied contractual indemnity"]; *Far West Financial Corp. v. D & S Co.* (1988) 46 Cal.3d 796, 817 [251 Cal.Rptr. 202, 760 P.2d 399] ["a tort defendant who has entered into a good faith settlement within the meaning of section 877.6, subdivision (c) is absolved of any further liability for all equitable indemnity claims"].) Although the trial court's determination of the good faith or lack of good faith of a settlement is reviewed for an abuse of discretion, whether a determination of a good faith settlement applies to a party or claim is a question of law that we review de novo. (*Gackstetter v. Frawley* (2006) 135 Cal.App.4th 1257, 1270 [38 Cal.Rptr.3d 333]; see generally *KB Home v. Superior Court* (2003) 112 Cal.App.4th 1076, 1083 [5 Cal.Rptr.3d 587] ["even when a decision by the trial court is generally reviewed for abuse of discretion, we must determine at the outset whether the court applied the correct legal standard to the issue in exercising its discretion, which determination is also a question of law for this court"].)

Pursuant to the terms of the 2002 settlement agreement, the parties expressly reserved the right to pursue claims against each other for latent defects. Accordingly, notwithstanding the trial court's good faith determination, there can be no question Willdan would have the right to seek indemnity from Shawnan if the City had sued Willdan to recover for damages allegedly attributable to latent defects in the boulevard project resulting from Willdan's negligence. (Cf. *Bay Development, Ltd. v. Superior Court, supra,* 50 Cal.3d at

p. 1032; see generally *McCall v. Four Star Music Co.* (1996) 51 Cal.App.4th 1394, 1400 [59 Cal.Rptr.2d 829] [settlement agreement that preserved judgment creditor's rights against joint tortfeasor did not constitute full satisfaction of judgment; "intent of the parties as expressed in the release is controlling"].)[6] In fact, Shawnan itself acknowledged this right in its motion in limine seeking to exclude evidence of defects released by the settlement agreement, asserting, "[T]he only defects [Willdan] could pursue would be latent defects as of the date of the Settlement Agreement."

▪ Although effectively conceding Willdan's right to seek indemnity for claims relating to latent defects, Shawnan contends the dismissal of Willdan's cross-complaint was nonetheless proper because the City's complaint did not allege the problems with the roadway were latent construction defects attributable to Shawnan—indeed the City did not bring a claim against Shawnan for latent defects, as it could have—but instead were solely due to Willdan's negligent design. While the City may have framed its deficient roadway claim as one of negligent design against only Willdan for strategic reasons, its choice did not preclude Willdan from seeking to prove the deficiencies, if any, were due in whole or part to latent defects attributable to Shawnan—that is, Willdan was entitled to demonstrate, if it could, that the pavement deficiencies the City attributed to Willdan's road designers were latent defects within the meaning of the settlement agreement and were caused, or at least exacerbated, by Shawnan's failure to procure appropriate construction materials and to mix them properly. (See *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1197 [246 Cal.Rptr. 629, 753 P.2d 585] [plaintiffs "no longer have the unilateral right to determine which defendant or defendants should be included in an action" under doctrine of comparative equitable indemnity]; *GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 428 [261 Cal.Rptr. 626] ["[a]s part of the comparative equitable indemnity doctrine, a defendant who is sued has a right to bring in other tortfeasors who are allegedly responsible for plaintiff's action through a cross-complaint or by a separate complaint for equitable indemnification"]; *Allen v. Southland Plumbing, Inc.* (1988) 201 Cal.App.3d

---

[6] It is well established a good faith settlement "would not preclude an indemnity action based on an express indemnity agreement." (*Bay Development, Ltd. v. Superior Court, supra,* 50 Cal.3d at p. 1032; see *C. L. Peck Contractors v. Superior Court* (1984) 159 Cal.App.3d 828, 834 [205 Cal.Rptr. 754] ["when contractual indemnity *is* applicable, the doctrine of equitable indemnity does *not* come into play"; "the law permits people to voluntarily order their affairs in a manner agreeable to them and equity rarely interferes with a contract knowledgeably executed"].) The parties' express agreement in this case to exclude all potential claims for latent defects from their settlement and to defer resolution of claims for liability or indemnity relating to those claims is entitled to no less respect.

60, 64 [246 Cal.Rptr. 860] [plaintiff "had 'no right to single out' " particular defendant "to bear all the loss"].) "[A] defendant/indemnitee may in an action for indemnity seek apportionment of the loss on any theory that was available to the plaintiff upon which the plaintiff would have been successful." (*GEM Developers*, at p. 430.)

It is not significant in this regard that Willdan and Shawnan may not have acted in concert and, therefore, are not "joint tortfeasors" in the classic sense of that term: The doctrine of comparative equitable indemnity is available to apportion liability among wrongdoers based on their relative culpability provided only that the actions of the parties combined to create an indivisible injury to the plaintiff. (See, e.g., *Textron Financial Corp. v. National Union Fire Ins. Co.* (2004) 118 Cal.App.4th 1061, 1078 [13 Cal.Rptr.3d 586] ["[w]here tortious acts by separate person produce the same indivisible injury, each person is liable for the whole loss even if they did not act in concert"]; *Newhall Land & Farming Co. v. McCarthy Construction* (2001) 88 Cal.App.4th 769, 773 [106 Cal.Rptr.2d 10] ["joint tortfeasor includes joint, concurrent, and successive tortfeasors whose actions combine to cause the plaintiff's injury"]; *GEM Developers v. Hallcraft Homes of San Diego, Inc.*, *supra*, 213 Cal.App.3d at p. 431 ["term 'joint tortfeasor' as used in the comparative equitable indemnity context . . . is a broad term which includes joint, concurrent and successive tortfeasors"].)

Seeking to avoid the consequences of these well-developed principles of comparative equitable indemnity, Shawnan argues there were no construction issues raised in the City's action other than those known at the time the settlement agreement was executed three years earlier, which were fully released by the City and Willdan—in other words, there were no latent defects at issue. The record does not support Shawnan's assertion. In its application for a motion to deem the case complex, Willdan explained "recent destructive testing results (from close to 50 cores) [had] revealed material deficiencies in the pavement on [Santa Monica Boulevard]" and, in an accompanying declaration, emphasized its decision to name Shawnan was based on these results. In addition, shortly after the trial court made its good faith settlement determination and summarily dismissed Willdan's attempt to clarify whether the court had determined the deficient asphalt issues were within the scope of the settlement agreement, in the context of resolving Associated Soils's motion for judgment on the pleadings, counsel for the City stated, "The asphalt and the pavement of the road was not discussed. It was not part of the mediation. It was determined afterwards that it was a problem . . . . The real problems we have now came after the settlement." Consistent with the City's representation to the court, at trial Steven Marvin,

the City's expert, testified the City first called him to examine Santa Monica Boulevard in the late fall of 2003 because the City "had some concerns with some contamination in the surface of the pavement and there had béen some material popping out of the pavement surface" and "a couple of . . . intersections . . . were starting to show some rutting and some bleeding."

### 2. *Willdan's Liability to the City Was Not Solely Based on Breach of Contract*

As an alternative basis for upholding the trial court's decision, Shawnan argues Willdan's cross-complaint was properly dismissed because Willdan's liability to the City was based on its breach of contract, not negligence or other tortious conduct. Although Shawnan's general statement of the law may be sound (see *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group* (2006) 143 Cal.App.4th 1036, 1051 [49 Cal.Rptr.3d 609] (conc. opn. of Pollak, J.) ["[t]he historical limitation excluding contract liability from the scope of equitable indemnity is consistent with the manner in which damages are awarded in a simple two-party breach of contract action"]; *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.* (2004) 119 Cal.App.4th 848, 852–853 [14 Cal.Rptr.3d 721] [equitable indemnity limited to cases in which indemnitor's liability is based on tort principles]), its application of that principle to the instant case is flawed. The City alleged and tried both breach of contract and professional negligence theories against Willdan. The jury returned a general verdict, which must be construed as a finding in the City's favor on all theories supported by substantial evidence. (E.g., *Henderson v. Harnischfeger Corp.* (1974) 12 Cal.3d 663, 673 [117 Cal.Rptr. 1, 527 P.2d 353] [describing "settled rule" that "general verdict implies a finding in favor of the prevailing party on every fact essential to the support of his action or defense"]; *Price v. Bekins Van & Storage Co.* (1918) 179 Cal. 326, 328 [176 P. 452]; see *Bresnahan v. Chrysler Corp.* (1998) 65 Cal.App.4th 1149, 1153 [76 Cal.Rptr.2d 804].) Moreover, although Shawnan, like Willdan, had a contractual relationship with the City, it also had a duty of care to perform in a competent manner. (See *Stonegate Homeowners Assn. v. Staben* (2006) 144 Cal.App.4th 740, 748 [50 Cal.Rptr.3d 709] [" ' " '[a]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort as well as a breach of the contract' " ' "].)

In *Stonegate Homeowners Assn. v. Staben, supra,* 144 Cal.App.4th 740, a construction defect case, Division Two of this court reversed the trial court's order granting judgment in favor of a subcontractor in the homeown-

ers association's negligence action against the general contractor and the subcontractor because expert testimony concerning the subcontractor's standard of care had been improperly excluded and also reversed summary judgment granted in favor of the subcontractor on the general contractor's cross-complaint for indemnity because triable issues of material fact existed as to whether the subcontractor was negligent. Quoting from a well-known treatise on real estate and construction law, our colleagues explained the fundamental premise for their decision: " 'The subcontractor has a duty to perform work in a good and workmanlike manner. A subcontractor who is careless and negligent in the performance of the work is liable to the general contractor, to the owner, and to third persons for any damages proximately caused. [¶] When the work is performed in a defective manner, the measure of liability is the same as the damages that the owner can recover from the contractor. . . . [¶] . . . The owner ordinarily has a cause of action against the subcontractor arising from the subcontractor's defective work, even though there is no privity of contract between the owner and the subcontractor. The owner usually has a cause of action in negligence as a party within the area of foreseeable risk.' " (*Id.* at p. 748.) Emphasizing the subcontractor's potential liability for negligence in connection with the indemnity claim, the court held "[b]ecause [the subcontractor] presented no evidence on the quality or manner of its work at the Stonegate project, it failed to meet its initial burden of showing that an element of the negligence claim could not be established (i.e., breach of duty)." (*Id.* at p. 752.) Paralleling the indemnity claim in *Stonegate Homeowners*, Willdan sought indemnity from Shawnan, not for breach of contract, but because *Shawnan* allegedly performed below the applicable standard of care by providing defective materials and performing its work in a defective manner. That theory is sufficient to support a claim for comparative equitable indemnity.

There is no question Willdan's theory of the case was that the deficiencies in the roadway for which the City sought to hold Willdan responsible were due to latent defects in the material attributable, at least in part, to Shawnan's negligence. The trial court erred in concluding otherwise. Because the settlement agreement does not encompass Willdan's claims, the cross-complaint for indemnity and declaratory relief against Shawnan should not have been dismissed. Necessarily, therefore, Shawnan was not the prevailing party, and the award of attorney fees and costs must be reversed as well.

## DISPOSITION

The orders included in the judgment appealed by Willdan are reversed. Willdan is to recover its costs on appeal.

Zelon, J., and Wiley, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.