**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MASON AND DIXON INTERMODAL,
INC.,
    *Plaintiff-counter-defendant-*
*Appellant,*

v.

LAPMASTER INTERNATIONAL LLC;
HARTFORD INSURANCE CO.,
    *Defendants-counter-claimants-*
*Appellees,*

v.

ITG TRANSPORTATION,
    *Third-party-defendant-cross-*
*claimant-Appellee,*

W.E.S.T. FORWARDING SERVICE,
    *Third-party-defendant-counter-*
*claimant-Appellee.*

No. 09-17833

D.C. No.
3:08-cv-01232-
VRW

OPINION

Appeal from the United States District Court
for the Northern District of California
Vaughn R. Walker, Chief District Judge, Presiding

Argued and Submitted
December 9, 2010—San Francisco, California

Filed January 18, 2011

Before: Robert E. Cowen*, A. Wallace Tashima, and
Barry G. Silverman Circuit Judges.

    *The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

893

Opinion by Judge Silverman

**COUNSEL**

Lori A. Sebransky, Matthew S. Conant, Lombardi, Loper & Conant, Oakland, California; Paul Keenan (argued), Keenan Cohen & Howard, Jenkintown, Pennsylvania, for the appellant.

Joseph D. Ryan (argued), Ryan & Lifter, San Ramon, California, for the appellee.

---

## OPINION

SILVERMAN, Circuit Judge:

Mason and Dixon Intermodal, Inc. (MDII), a motor carrier, appeals the district court's judgment in its diversity action regarding damage to goods in interstate carriage against Lapmaster, a shipper; Lapmaster's insurer, Hartford; and a freight broker, ITG Transportation, Inc. Lapmaster and Hartford brought claims for the value of the damage to the freight against MDII under the Carmack Amendment, and California law negligence claims against ITG; and MDII maintained state law negligence and contribution claims against ITG. ITG entered into a settlement agreement with Lapmaster and Hartford, and moved for dismissal pursuant to a good faith settlement under Cal. Civ. Proc. Code §§ 877 and 877.6. The district court found the settlement to be in good faith and granted ITG's motion, therefore barring MDII's claims against ITG. MDII appealed.

We affirm.

### *Factual Background*

Lapmaster purchased two large precision flat lapping and polishing machines manufactured in Japan for shipment and sale to a customer located in Fremont, California. The machines were "oversized," that is, too large to fit into standard intermodal shipping containers. The machines were delivered without incident from Japan to the Port of Oakland, California. Lapmaster hired World Express Shipping Transportation and Forwarding Services, Inc. (WEST) to handle customs entry and arrange for transportation of the machines

to Fremont. WEST contracted with ITG, a broker, which arranged for MDII to deliver the machines from the Port of Oakland to Fremont. During communications between WEST and ITG, ITG was made aware that the freight would be dimensionally oversized; however, WEST sent ITG a dispatch order that did not note the size of the freight. ITG called WEST to confirm whether the freight was "in gauge," that is standard-sized, or oversized. WEST told ITG that the freight was "in gauge." ITG then faxed a delivery order and bill of lading to MDII that requested "standard flat racks," that is, equipment designed to accommodate standard-size freight. Accordingly, MDII dispatched two drivers, each equipped with standard flat racks, to pick up the freight at the Port of Oakland.

While being transported by MDII, the machines were damaged in two separate, but essentially identical, accidents. The first driver set out from the Port of Oakland on December 26, 2007; however, the second driver had brake problems and did not set out until the next day. En route from the Port of Oakland to Fremont, the oversized machine transported by the first driver struck the 23rd Avenue overpass on Interstate 880, and suffered irreparable damage. Although the second driver did not set out until the next day, the second driver nonetheless managed to irreparably damage the second machine in the exact same manner as the first — by striking it against the 23rd Avenue overpass on Interstate 880. Lapmaster's insurer, Hartford, paid Lapmaster $820,554.92, exclusive of $10,000 in deductibles, on account of the accidents.

### PROCEDURAL BACKGROUND

MDII initiated the proceedings before the district court by filing a complaint against Lapmaster and Hartford, seeking to limit its liability and for indemnification arising out of the accidents. The district court exercised diversity jurisdiction over MDII's initial complaint. Lapmaster and Hartford filed counterclaims against MDII and third-party complaints

against WEST and ITG. The district court exercised supplemental jurisdiction over the third-party complaints.

After the parties filed motions for summary judgment and partial summary judgment, the court issued an order disposing of nineteen causes of action in their entirety and a portion of thirteen others. Of the remaining claims, Lapmaster and Hartford maintained against ITG only state law claims for negligence, implied indemnity, and negligent interference with prospective economic advantage. Lapmaster and Hartford maintained only Carmack Amendment claims against MDII. The district court also made several findings regarding limitations on liability, including that (1) Lapmaster and Hartford's maximum recovery could not exceed their actual losses of $804,693.18, (2) MDII had not limited its liability to an amount less than the maximum recovery, and (3) ITG's liability was limited to $200,000 under a price quote provided to Lapmaster. Although it found that ITG had effectively limited its liability to $200,000 as to Lapmaster and Hartford, the district court also held that this finding "does not affect any indemnification claims MDII may have against ITG." The district court then allowed MDII to add counterclaims against ITG for indemnity and negligence.

ITG, Lapmaster, and Hartford entered into a conditional settlement agreement by which ITG agreed to pay a total of $150,000 to be divided between Lapmaster and Hartford in exchange for a release of liability from all claims arising out of this incident. ITG then moved for dismissal pursuant to a good faith settlement under Cal. Civ. Proc. Code §§ 877 and 877.6. The district court granted ITG's motion over MDII's opposition. Applying the factors stated in *Tech-Bilt, Inc. v. Woodward-Clyde Associates*, 38 Cal. 3d 488, 499 (1985), the district court found that the settlement between ITG, Lapmaster, and Hartford was reached in good faith. The district court found that a $150,000 settlement was "well within an appropriate range," considering that ITG's liability to Hartford and Lapmaster was limited to $200,000, per the district

court's earlier finding. The district court concluded that "it is clear that the facts of the case and the position of the parties mandated roughly this type of result."

The cause of action was dismissed on November 24, 2009. MDII timely filed a notice of appeal on December 21, 2009.

### *JURISDICTION*

The district court properly exercised diversity jurisdiction over MDII's initial complaint against Lapmaster and Hartford pursuant to 28 U.S.C. § 1332. And, although not affirmatively alleged in MDII's complaint, it also had federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Count I of the complaint alleged a claim for declaratory relief under the Carriage of Goods by Sea Act, 46 U.S.C. § 30701 note. The district court thus properly exercised supplemental jurisdiction over the third-party complaints pursuant to 28 U.S.C. § 1367(a). We have jurisdiction pursuant to 28 U.S.C. § 1291.

### *STANDARD OF REVIEW*

We review the district court's application of California Code of Civil Procedure sections 877 and 877.6 to ITG's motion to dismiss pursuant to a good faith settlement as a question of law to be reviewed de novo. *Willdan v. Sialic Contractors Corp.*, 158 Cal. App. 4th 47, 54, 69 Cal. Rptr. 3d 633 (2007). We review the trial court's determination that a settlement was made in good faith for an abuse of discretion. *Id.*

### *DISCUSSION*

### I.   The District Court Correctly Applied State Substantive Law to ITG's Motion to Dismiss Pursuant to Good Faith Settlement

**[1]** When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies

state substantive law to the state law claims. *See Galam v. Carmel (In re Larry's Apartment)*, 249 F.3d 832, 837 (9th Cir. 2001); *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000). This court has held that California Code of Civil Procedure section 877 constitutes substantive law. *See Fed. Savings & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 511 (9th Cir. 1990). The district court correctly applied California law to resolve ITG's motion to dismiss pursuant to good faith settlement. *See id.*

## II.   The District Court Did Not Err in Applying California Code of Civil Procedure Sections 877 and 877.6 Because the Carmack Amendment Does Not Preempt State Settlement Law.

MDII argues that federal common law regarding partial settlement of cases with multiple defendants should preempt state settlement laws in cases involving liability under the Carmack Amendment because the diversity of state settlement laws conflicts with the federal interest in a uniform liability scheme for interstate carriers.

**[2]** In determining whether federal law should preempt state law, the Supreme Court has instructed that "matters left unaddressed in [a comprehensive and detailed statutory scheme] are presumably left to the disposition provided by state law." *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 85 (1994); *see also Wyeth v. Levine*, 129 S. Ct. 1187, 1194-95 (2009). Beginning with that presumption, courts should consider the purpose of Congress in enacting the federal statute at issue, *id.* ("the purpose of Congress is the ultimate touchstone in every preemption case"), and determine whether "there is a significant conflict between some federal policy or interest and the use of state law." *O'Melveny & Myers*, 512 U.S. at 87.

### A. The Federal Interest in a Uniform National Liability Policy for Interstate Carriers Is Designed to Ensure That Carriers May Predictably Assess Risk and Set Rates Accordingly.

**[3]** The Carmack Amendment to the Interstate Commerce Act was enacted in 1906 to relieve the inconsistent outcomes caused by a patchwork of state laws governing a carrier's liability for damage to goods in interstate carriage. *See Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913). Before Carmack, the diversity of state law causes of action and limitations on liability related to these damages was such "that it was practically impossible for a shipper engaged in a business that extended beyond the confines of his own state, or a carrier whose lines were extensive, to know . . . what would be the carrier's actual responsibility as to goods delivered to it for transportation from one state to another." *Id.*

**[4]** In *Southwest Express Co. v. Pastime Amusement*, the Court articulated the purpose of Congress in creating a uniform national liability scheme for interstate carriers, stating "[t]he underlying principle is that the carrier is entitled to base rates upon value and that its compensation should bear a reasonable relation to the risk and responsibility assumed. The broad purpose of the federal act is to compel the establishment of reasonable rates and provide for their uniform application." 299 U.S. 28, 29 (1936) (citations omitted). To this end, in *Adams*, the Supreme Court held that the Carmack Amendment preempts all state and common law claims for relief against a carrier for damage to goods in interstate carriage, regardless of whether those claims contradict or supplement Carmack relief. *See Charleston & W.C. Ry. Co. v. Varnville Furniture Co.*, 237 U.S. 597, 604 (1915) (finding that a $50 fine imposed by South Carolina law upon carriers who fail to timely report damage was preempted by Carmack); *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992) (holding that the Carmack Amendment preempts all state law tort and contract actions

against a common carrier for damage to goods in interstate commerce).

**[5]** The limitations of Carmack preemption illustrate that the federal interest in establishing a uniform liability policy does not extend beyond ensuring a carrier's predictable maximum liability. In upholding a generally applicable Texas statute under which a Carmack plaintiff was awarded attorneys' fees, the Court held that states may maintain laws that do not "in anywise either enlarge or limit the responsibility of the carrier for the loss of property intrusted to it in transportation, and only incidentally affect[ ] the remedy for enforcing that responsibility." *Mo., K&T, Ry. Co. of Tex. v. Harris*, 234 U.S. 412, 420, 34 S. Ct. 790, 58 L. Ed. 1377 (1914). The Court went on to note that the Texas statute was not inconsistent with the Carmack Amendment in that it did not affect a shipper's "ground of recovery, or the measure of recovery" against a carrier for goods damaged in interstate carriage. *Id.* at 421-422. "[T]he Court concluded that whatever burden was thereby placed upon commerce was overbalanced by the importance of the statute to the state's policy of offering an incentive to the prompt settlement of small but well-founded claims and as a deterrent of groundless defenses." *A.T. Clayton & Co., Inc. v. Missouri-Kansas-Texas, R. Co.*, 901 F.2d 833, 834-35 (10th Cir. 1990) (citing *Harris*, 234 U.S. at 421); *cf. Accura Sys., Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 877 (5th Cir. 1996) (holding that Carmack Amendment preempts Texas attorneys fees' statute with no limit on fees, distinguishing *Clayton* and *Harris* because those cases involved limited fee recovery, and did not present a "potentially unlimited recovery of attorneys' fees").

**[6]** Excluding from the scope of Carmack preemption a generally applicable statute designed to encourage settlement that "only incidentally affects" a shipper's recovery from a carrier is in keeping with the purpose stated in *Southwest Express* that carriers be able to "base rates upon value" and that a carrier's "compensation should bear a reasonable rela-

tion to the risk and responsibility assumed." 299 U.S. at 29. When a carrier receives goods for interstate transportation, the carrier can assess the value of those goods, predict its liability with certainty based on "actual loss," and set a rate based on the risk and responsibility assumed. The only information required to set that rate are the value of the goods and the carrier's maximum liability for carrying them. To the extent that the additional burden of a generally applicable state law does not appreciably affect a shipper's grounds for or measure of recovery against a carrier, it cannot affect a carrier's calculus in setting rates, and therefore cannot conflict with Carmack's purpose.

### B. California Good Faith Settlement Law Does Not Conflict With the Federal Interest in a Uniform Policy of Liability for Damages to Goods in Interstate Carriage.

**[7]** State settlement laws conflict with the Carmack Amendment only to the extent that those laws "enlarge or limit the responsibility of the carrier" for damages to the shipper. *Harris,* 234 U.S. at 420; *see also Varnville Furniture Co.*, 237 U.S. at 604. There is no evidence nor any contention by any party that California Code of Civil Procedure sections 877 and 877.6 could increase MDII's liability in excess of the maximum damages prescribed by Carmack, or limit the shipper's recovery to less than the actual value of the damage to the machines. Much like the attorneys' fees statute at issue in *Harris*, sections 877 and 877.6 are generally applicable, do not affect a shipper's "ground of recovery, or the measure of recovery" against a carrier, and are important to California's "strong public policy . . . to encourage the voluntary settlement of litigation." *Harris*, 234 U.S. at 421-422; *Osumi v. Sutton*, 151 Cal. App. 4th 1355, 1359-60 (2007); *see also A.T. Clayton & Co., Inc.*, 901 F.2d at 834-35 (citing *Harris*, 234 U.S. at 421). Regardless of the settlement law applied, Lapmaster and Hartford have only a single, strict liability cause of action under the Carmack Amendment against MDII for

damages to the machines under which they can collect no more than $804,693.18; and MDII cannot be held liable for those damages in excess of $804,693.18.

**[8]** The Carmack Amendment does not show a preference for any particular approach to partial settlement because no regime conflicts with the statute's goal of ensuring that carriers can "assess their risks and predict their potential liability for damages." *Suarez v. United Van Lines*, 791 F. Supp. 815, 817 (D. Colo. 1992) (citing *Hughes v. United Van Lines*, 829 F.2d, 1407, 1415 (7th Cir. 1987)). A carrier's net liability for damages after recovery from third parties based on their relative culpability does not depend on the legal mechanism by which a carrier may recover, but rather the extent of the third party's culpability and that party's preference for settlement. Under any settlement regime, these variables are unpredictable, and therefore cannot affect a carrier's ability to set rates. Consequently, the application of diverse state settlement laws in Carmack Amendment cases does not threaten the federal interest in a uniform national scheme that allows carriers to set their rates based on predictable liability for damages to goods in interstate carriage. Federal law does not therefore preempt state law, and California Code of Civil Procedure sections 877 and 877.6 applies.

### III.   The District Court Did Not Err in Applying Cal. Civ. Proc. Code §§ 877 and 877.6 Because MDII and ITG Are Joint Tortfeasors.

MDII argues that sections 877 and 877.6 should not apply to bar MDII's indemnity claims against ITG because MDII and ITG are not "joint tortfeasors" within the meaning of those statutes. MDII's argument is unpersuasive, and mostly rests on the misconception that a claim under the Carmack Amendment is somehow not a claim for damages in tort.

**[9]** MDII and ITG are joint tortfeasors, at least for purposes of the bar to claims for equitable indemnity under sec-

tion 877, because they are each liable to Lapmaster and Hartford for a detriment caused by the breach of a duty. *See BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 852, 14 Cal. Rptr. 721 (2004). Both parties owed a duty to Lapmaster and Hartford related to the transportation of the machines. It is undisputed that ITG owed a duty of reasonable care under state law. MDII owed a duty governed by strict liability under the Carmack Amendment. *See Georgia, Florida, & Atlantic Ry. v. Blish Milling Co*, 241 U.S. 190, 196, 36 S. Ct. 541, 60 L. Ed. 948 (1916) (explaining that the Carmack Amendment covers "all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation").

MDII argues that "any party liable *solely* under a statute is not a tortfeasor subject to the provisions of [sections 877 and 877.6]." However, California courts have held that strictly liable defendants may be held responsible as joint tortfeasors alongside negligent defendants. *See Safeway Stores, Inc. v. Nest-Kart*, 21 Cal. 3d 322, 330, 146 Cal. Rptr. 550 (1978) ("Nothing in the rationale of strict [ ] liability conflicts with a rule which apportions liability between a strictly liable defendant and other responsible tortfeasors."); *BFGC Architects*, 119 Cal. App. 4th at 852 ("strict liability . . . may sustain application of equitable indemnity") (citing *Daly v. Gen. Motors Corp.*, 20 Cal. 3d 725, 737, 144 Cal. Rptr. 380 (1978)).

**[10]** Because MDII and ITG are joint tortfeasors under California law, the district court did not err in applying Cal. Civ. Proc. Code §§ 877 and 877.6 to bar MDII from asserting claims for indemnity and contribution against ITG after the District Court granted the motion to dismiss the claims pursuant to a good faith settlement.

**IV.   The District Court Did Not Err In Concluding That the Settlement Between ITG, Lapmaster, and Hartford Satisfied the Good Faith Settlement Requirement of § 877.6.**

To determine whether a settlement has been made in good faith, California courts consider (1) "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability"; (2) "the amount paid in settlement"; (3) "the allocation of settlement proceeds among plaintiffs"; and (4) "a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial." *Tech-Bilt*, 38 Cal. 3d at 499. The California Supreme Court also held that "[o]ther relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants." *Id.*

**[11]** The key facts in this case are that (1) ITG provided MDII with erroneous information on the "import dispatch" regarding the size of the machines and the proper equipment required to safely transport them; (2) an MDII driver, even after seeing the size of the machines, continued to load one machine onto his improperly equipped truck and proceeded to damage it by hitting a freeway overpass; and (3) a second MDII driver who did not depart the port until the next day was not alerted to the problems faced by the first driver, and proceeded to damage the second machine in exactly the same manner as the first. Under these facts, it is not unreasonable to conclude that MDII was responsible for the overwhelming majority of damage to the machines.

**[12]** Furthermore, the district court had earlier ruled that ITG's liability to Lapmaster and Hartford was limited to $200,000, and ITG settled with Lapmaster and Hartford for a total of $150,000 with $80,000 to be allocated to Lapmaster and $70,000 to Hartford. The district court's order demonstrates that it considered all of the above facts in addition to

MDII's argument that ITG was still exposed to same degree of liability as MDII. The district court did not abuse its discretion in determining that the settlement between ITG, Lapmaster, and Hartford was made in good faith.

AFFIRMED.