**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PACIFIC INDEMNITY COMPANY,
        *Plaintiff-Appellee,*

v.

ATLAS VAN LINES, INC.,
        *Defendant-cross-defendant-*
                *Appellee,*

v.

PICKENS KANE MOVING & STORAGE
COMPANY, a corporation,
        *Defendant-cross-claimant-*
                *Appellant.*

No. 09-17824

D.C. No.
2:08-cv-00466-FJM

PACIFIC INDEMNITY COMPANY,
        *Plaintiff-Appellee,*

ATLAS VAN LINES, INC.,
        *Defendant-cross-defendant-*
                *Appellant,*

v.

PICKENS KANE MOVING & STORAGE
COMPANY, a corporation,
        *Defendant-cross-claimant-*
                *Appellee.*

No. 10-16260

D.C. No.
2:08-cv-00466-FJM

OPINION

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, District Judge, Presiding

Submitted March 17, 2011*
San Francisco, California

Filed April 20, 2011

Before: Thomas M. Reavley, M. Margaret McKeown, and
Richard A. Paez, Circuit Judges.**

Opinion by Judge Reavley

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Thomas M. Reavley, Senior United States Circuit
Judge for the Fifth Circuit, sitting by designation.

## COUNSEL

John T. Schriver, Duane Morris LLP, Chicago, Illinois, for Pickens Kane Moving & Storage.

Jeffrey R. Simmons, Ryley Carlock & Applewhite, Phoenix, Arizona, for Atlas Van Lines.

## OPINION

REAVLEY, Circuit Judge:

Pacific Indemnity Co. ("Pacific") brought suit for carrier liability pursuant to 49 U.S.C. § 14706, the Carmack Amendment, against Atlas Van Lines, Inc. ("Atlas") and Pickens Kane Moving & Storage Co. ("Pickens") to recover $1 million in damages Pacific paid to its insureds, Ina and Murray Manaster, (the "Manasters") when the Manasters' shipment of household goods was destroyed by a fire while in transit from Chicago to Phoenix. Pickens was the receiving carrier, and the goods were destroyed in the custody of Atlas. Atlas and Pickens filed cross-claims against each other, also for carrier

liability. On summary judgment, the district court held that Atlas was liable to both Pacific and Pickens for $52,500.00 or $5.00 per pound and that Pickens was liable to Pacific for $1 million. Additionally, the district court held that as to the cross-claims between Atlas and Pickens, Pickens was the prevailing party and, therefore, entitled to an award of the entirety of its expenses. Pickens appeals the district court's judgment that Atlas is responsible for anything less than the full replacement value of the goods. Atlas appeals the district court's judgment awarding costs to Pickens. We affirm.

## Background

The facts of this case are relatively straight-forward and not in dispute. The Manasters desired to move their household goods, consisting mainly of fine arts and antiques, from Chicago to Phoenix. They requested a quote from Pickens. Pickens, in turn, requested a quote from nonparty TCI—a freight broker. TCI then requested a quote from Atlas. Atlas provided TCI with a quote based on the minimum tariff of $.60 per pound. TCI then submitted the quote to Pickens with the notation that the quote did not include insurance. Pickens submitted a quote to the Manasters. The Manasters requested $1 million in insurance coverage and the rate was adjusted accordingly. Pickens contracted with TCI, who contracted with Atlas for the shipment at the per pound rate, but Pickens never informed TCI or Atlas of the $1 million valuation.

On November 2, 2006, Atlas picked up the Manasters' household goods from the Pickens warehouse. The Atlas bill of lading was signed by Pickens' representative as shipper and by Atlas' driver as carrier, and it listed the Manasters as the consignee. The bill of lading had a valuation section on its first page as follows:

**VALUATION**: The released rates[1] for shipments

---

[1]"Released rates" are rates approved by the Surface Transportation Board which a carrier may use to limit its liability through the written dec-

moving under this bill of lading vary with the services provided under the tariff and Carrier's tariff is incorporated into this bill of lading for determination of which released rate applies. Shipper has released the entire shipment to a value not exceeding:

(TO BE COMPLETED BY THE SHIPPER SIGNING BELOW)

❏ The maximum released rate set forth in the tariff for shipments on which specified services are being provided, which may be either $.60 per pound per article or $5.00 per pound. (This is not insurance but a limit on Carrier's Liability.)

❏ The declared value for the property of $_____. If this amount exceeds the maximum released rate in the tariff, Carrier shall obtain insurance in the amount on Shipper's behalf for the charges set forth in the tariff.

**IF NO DECLARATION IS MADE, THE SHIPMENT SHALL BE DEEMED RELEASED TO THE VALUE SET FORTH IN THE TARIFF.**

Pickens' representative signed the bill of lading but did not choose either option and did not indicate a declared value for the property.

Pickens also had a bill of lading for warehouse labor. In the signature block of the bill of lading, Pickens' representative signed as the carrier and Atlas' driver signed as the shipper. The valuation section of the bill of lading read:

---

laration of the shipper. 49 U.S.C. § 14706(f)(1); Released Rates of Motor Common Carriers of Household Goods, Amendment No. 5 to Released Rates Decision No. MC-999, 2007 WL 1696990 (S.T.B. June 11, 2007).

**SHIPPER MUST COMPLETE THIS VALUATION DESIGNATION**

Unless the shipper expressly releases the shipment to a value of $.30 per pound per article, the mover's maximum liability for loss of or damage to the shipment shall be an amount equal to $2.00 for each pound of weight in the shipment or the lump sum value declared by the shipper on this form, whichever is greater, subject to the valuation charges in the applicable tariff on file with the Illinois Commerce Commission.

If the shipper wishes to avoid these additional charges, the shipper must agree that if any articles are lost or damaged, the mover's liability will not exceed 30 cents per pound for the actual weight for any lost or damaged article or articles in the shipment.

The shipment shall move subject to the rules and conditions of the mover's tariff. Shipper hereby releases the entire shipment to a value not exceeding: $_____.

Again, the valuation section of the bill of lading was left blank.

The Manasters' property was destroyed by fire during transport while in the custody of Atlas. Pacific paid the Manasters' claim in full for $1 million and was subrogated to their interests. Pacific then filed suit in the District Court of Arizona for carrier liability under the Carmack Amendment against both Pickens and Atlas. Pickens and Atlas cross-claimed against each other also for carrier liability.[2] Pacific

---

[2]Pacific also amended its suit to add common law negligence claims. Those claims were dismissed as preempted by the Carmack Amendment. Pacific does not appeal the judgment of the district court.

moved for summary judgment against Pickens and Atlas. Pickens moved for summary judgment against Atlas. Atlas moved for partial summary judgment against Pacific and Pickens to limit its liability.

The district court held that Atlas was liable to both Pacific and Pickens for $52,500.00 or $5.00 per pound, and that Pickens was liable to Pacific for $1 million. Pickens moved for reconsideration, which the district court denied. Pickens also moved for reasonable expenses from Atlas. The district court granted that motion, holding that Pickens, as the prevailing party, was entitled to recover the entirety of its expenses from Atlas. Pickens appealed from the judgment, specifically the apportionment of damages. Atlas separately appealed the judgment, specifically the award of costs to Pickens. The appeals were consolidated and are now before the court.

## Analysis

The Carmack Amendment is a part of the Interstate Commerce Act, which "provides the exclusive cause of action for interstate shipping contract claims." *White v. Mayflower Transit, L.L.C.*, 543 F.3d 581, 584 (9th Cir. 2008). Two sections of the Carmack Amendment are at issue in this case. The first is § 14706(f), entitled "Limiting liability of household goods carriers to declared value." The section reads:

> (1) In general. — A carrier or group of carriers subject to jurisdiction under subchapter I or III of chapter 135 may petition the Board to modify, eliminate, or establish rates for the transportation of household goods under which the liability of the carrier for that property is limited to a value established by written declaration of the shipper or by a written agreement.

> (2) Full value protection obligation. — Unless the carrier receives a waiver in writing under paragraph (3), a carrier's maximum liability for household

goods that are lost, damaged, destroyed, or otherwise not delivered to the final destination is an amount equal to the replacement value of such goods, subject to a maximum amount equal to the declared value of the shipment and to rules issued by the Surface Transportation Board and applicable tariffs.

(3) Application of rates.—The released rates established by the Board under paragraph (1) (commonly known as "released rates") shall not apply to the transportation of household goods by a carrier unless the liability of the carrier for the full value of such household goods under paragraph (2) is waived, in writing, by the shipper.

49 U.S.C. § 14706(f). In 2005, Congress added subsections (2) and (3), which form the basis of Pickens' argument. The interpretation of these subsections is a matter of first impression.[3]

The second provision of the Carmack Amendment at issue here is the cost apportionment provision which reads:

The carrier issuing the receipt or bill of lading under subsection (a) of this section or delivering the property for which the receipt or bill of lading was issued is entitled to recover from the carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property, as evidenced by a receipt, judgment, or transcript, and the amount of its expenses reasonably incurred in defending a civil action brought by that person.

---

[3]Aside from the district court in this case, the only other court to address these subsections is the United States District Court for the Eastern District of Virginia in an unpublished opinion. *Boles v. Destination Movers, Inc.*, No. 1:09-cv-19, 2009 WL 1974459 (E.D.Va. Jul. 6, 2009).

49 U.S.C. § 14706(b). We have not addressed the possible apportionment of costs among carriers. It is also a matter of first impression.

## 1. Replacement Value of Household Goods

On summary judgment, the district court held that Atlas was liable to both Pacific and Pickens for $52,500.00 or $5.00 per pound, and that Pickens was liable to Pacific for $1 million. Pickens does not appeal the assessment of liability itself, rather it argues that the apportionment of the damages was in error. "We review the grant of summary judgment de novo." *Ventura Packers, Inc. v. F/V JEANINE KATHLEEN*, 305 F.3d 913, 916 (9th Cir. 2002). The district court's interpretation of 49 U.S.C. § 14706 is a question of law, which we review de novo. *Id.* One reason that the district court apportioned the damages as it did was that it construed 49 U.S.C. §§ 14706(f)(2) and (3) to limit Atlas' liability to the tariff amount of $5.00 per pound in the absence of a declared value. We agree.

[1] The Carmack Amendment allows carriers to limit their liability for shipments of household goods under certain circumstances. In particular, "[u]nless the carrier receives a waiver in writing under paragraph (3), a carrier's maximum liability for household goods that are lost, damaged, destroyed, or otherwise not delivered to the final destination is an amount equal to the replacement value of such goods[.]" 49 U.S.C. § 14706(f)(2). However, that subsection goes on to say that "the replacement value of such goods [is] subject to a maximum amount equal to the declared value of the shipment and to rules issued by the Surface Transportation Board and applicable tariffs." *Id.*

Here, Pickens failed to declare a value for the shipment. It argues that, in the absence of a written waiver, the failure entitles Pickens to the full replacement value of the shipment. And, it urges that the full replacement value in this case is $1

million. Pickens is partially correct; it is entitled to the replacement value, but that value is $52,500.00. Subsection (f)(2) states that the replacement value of the household goods is subject to or conditioned upon several possible factors. The first is the declared value of the property. Since there is no declared value in this case, that condition is not implicated.

**[2]** Replacement value is also conditioned on the rule issued by the Surface Transportation Board (the "Board"). The Board has determined that "when a shipper elects the [full value protection] option but neglects to write a valuation figure on the bill of lading or contract" the carrier is liable for an assumed valuation "set at $5,000 or $4.00[4] times the actual total weight in pounds of the shipment, whichever is greater." Released Rates of Motor Common Carriers of Household Goods, Amendment No. 5 to Released Rates Decision No. MC-999, 2007 WL 1696990 (S.T.B. June 11, 2007) ("S.T.B. Amendment 5"). In other words, when a shipper does not a declare a value for a shipment, the replacement value is deemed to be $4.00 per pound or a minimum of $5,000.00. *Id.*

Congress gave the Board primary authority for enforcement of the Interstate Commerce Act. *Fulfillment Servs., Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 616-17 (9th Cir. 2008). "Where there is a challenge to the agency's interpretation of the statute that it administers, we apply the analytical framework set forth in *Chevron*[.]" *DHX, Inc. v. Surface Transp. Bd.*, 501 F.3d 1080, 1086 (9th Cir. 2007) (internal citation omitted). " 'If the intent of Congress is clear . . . [we] must give effect to the unambiguously expressed intent of Congress.' " *Id.* (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44, 104 S. Ct. 2778, 2781-82 (1984)). "If however, the meaning of the statute is ambiguous, 'the question for the court is whether the

---

[4]Atlas adjusted this amount to $5.00 per pound in its Exceptions to [Household Goods] Tariff 400 Series. Carriers are allowed to adjust the tariffs upwards in their exceptions.

agency's answer is based on a permissible construction of the statute.' " *Id.* (quoting *Chevron*, 467 U.S. at 843, 104 S. Ct. at 2782). " '[T]he court does not simply impose its own construction on the statute . . . .' " *Id.* (quoting *Chevron*, 467 U.S. at 843, 104 S. Ct. at 2782). Since the statute itself is arguably ambiguous regarding shipments with no declared value, we must ask whether the Board's order was permissible. *See id.*

**[3]** Reviewing § 14706 as a whole, it is evident that the Board's order regarding undeclared value is permissible. Subsection (f) is entitled "*Limiting* liability of household goods carriers to *declared* value." § 14706(f) (emphasis added). The Board's rule does just that. S.T.B. Amendment 5. It prevents carriers from being subjected to unlimited liability when cargo of undeclared value is destroyed. And, it also protects an unwary shipper from unscrupulous carriers by setting the replacement value at the higher tariff amount of $4.00 per pound,[5] instead of the released rate of $.60 per pound. We presume that Congress was aware of the Board's interpretation of the valuation of shipments with an undeclared value when it amended the Carmack Amendment in 2005. *Traynor v. Turnage*, 485 U.S. 535, 546, 108 S. Ct. 1372, 1380 (1988). Congress made no express provision for replacement values of undeclared shipments but instead chose to condition the replacement value on the Board's rules. § 14706(f)(2). The Board's rule is based on a permissible interpretation of subsections (f)(2) and (f)(3). Therefore, it must be accorded deference. *DHX*, 501 F.3d at 1086.

Last, the replacement value is conditioned on "applicable tariffs." § 14706(f)(2). The $4.00 per pound tariff was approved by the Board after full notice and comment rulemaking. Released Rates of Motor Common Carriers of

---

[5]In 2001 the Board found that the average value for a shipment of household goods was $4.50 per pound. Released Rates of Motor Common Carriers of Household Goods, Amendment No. 4 to Released Rates Decision No. MC-999, 2001 WL 1637941, at *3 (S.T.B. Dec. 21, 2001).

Household Goods, Amendment No. 4 to Released Rates Decision No. MC-999, 2001 WL 1637941 (S.T.B. Dec. 21, 2001). Atlas adjusts this tariff to $5.00 per pound in its exceptions to tariffs. The fact that this tariff was applicable to shipments with undeclared values was based on the Board's rule discussed above. The plain language of the statute and the Board's interpretation of the statute operate to limit Atlas' liability to the tariff amount on these facts.

**[4]** Pickens argues that the published tariff of $4.00 per pound cannot apply here because subsection (f)(3) states that "[t]he released rates . . . *shall* not apply to the transportation of household goods by a carrier unless the liability of the carrier for the full value of such household goods under paragraph (2) is waived, in writing, by the shipper." § 14706(f)(3). But again, without a declared value for the goods, the replacement value is deemed to be the tariff of $4.00 per pound as described above. While Pickens did not waive its entitlement to the "full value of such household goods under paragraph (2)," because it failed to declare a value for the shipment, the full value is deemed to be the tariff of $4.00 per pound pursuant to paragraph (2) as described above. The district court correctly interpreted these subsections.

## 2. Apportionment of Costs

Atlas appeals the district court's judgment awarding Pickens all of its requested costs under § 14706(b), totaling $74,402.35. A district court's award of costs is reviewed for an abuse of discretion. *Miles v. California*, 320 F.3d 986, 988 (9th Cir. 2003). "If an exercise of discretion is based on an erroneous interpretation of the law, the ruling should be overturned." *Id.*

On appeal, Atlas now makes three arguments. First, Atlas contends that because the district court held Pickens liable to Pacific for $1 million, Pickens is not an innocent party and therefore not entitled to shift its costs to Atlas. Citing no law

for this proposition, Atlas contends that in order to recover expenses under § 14706(b), Pickens must be completely blameless. Although that interpretation could be plausible if the damage to the shipment occurred while in the custody of both Atlas and Pickens, on the facts of this case, the argument fails.

[5] The Carmack Amendment imposes strict liability upon receiving carriers and delivering carriers in order to "relieve cargo owners 'of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods.' " *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 130 S. Ct. 2433, 2441 (2010) (quoting *Reider v. Thompson*, 339 U.S. 113, 119, 70 S. Ct. 499, 502 (1950)); 49 U.S.C. § 14706(a). Section 14706(b) allows the carrier held initially liable to recover from the carrier in control of the shipment when it was damaged. § 14706(b); *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, ___F. 3d ___, 2011 WL 135084, at *5-6 (9th Cir. Jan. 18, 2011) (citing *Georgia, Florida, & Atlantic Ry. v. Blish Milling Co.*, 241 U.S. 190, 196, 36 S. Ct. 541, 544 (1916)). Atlas does not deny that the shipment was destroyed while in Atlas' care. If Pickens had properly declared the value of the shipment and paid the insurance fees to Atlas, Atlas would have owed the entire $1 million. Under the plain language of the statute, Pickens is entitled to its reasonable fees from the carrier over whose line or route the injury occurred—here, Atlas. *See* § 14706(b).

[6] Second, Atlas argues that the district court erred when it determined that Pickens was the prevailing party. Atlas argues that because Pickens recovered only $52,500 of the $1 million it sought, Pickens did not prevail. It is inappropriate to apply the prevailing party analysis here, because this statute entitling Pickens to recover its costs contains no prevailing party requirement. § 14706(b). This is unlike the language in the same statutory scheme awarding attorney's fees to shippers. Section 14708(d) states that "[i]n any court action to

resolve a dispute between a shipper of household goods and a carrier providing transportation or service . . . , the shipper shall be awarded reasonable attorney's fees if . . . the shipper prevails in such court action[.]" § 14708(d)(2). "[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452, 122 S. Ct. 941, 951 (2002) (internal quotations omitted). Therefore, a prevailing party analysis is not necessary, nor even proper, under § 14706(b).

**[7]** In its last point, Atlas argues that because the costs are awarded under a subsection entitled apportionment, Pickens should be entitled to only 5.25% of its costs, the same percentage of the total damages attributed to Atlas. Atlas is really challenging the reasonableness of the award. The statute provides a mechanism for unreasonable or disproportionate costs by allowing recovery of the amount of expenses "reasonably incurred." § 14706(b). At the district court level, Atlas did not contest the reasonableness of the fees, except in relation to the judgment. It has therefore waived its ability to raise the issue now. *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 901 (9th Cir. 1994). However, even if Atlas had not waived the argument it is unavailing. As discussed above, Pickens was not the carrier in whose custody the shipment was destroyed and was therefore not liable for the damage in this case. If the actual damage had occurred in the custody of several carriers, then perhaps the costs would be apportioned among them. However, on the facts of this case, Atlas had custody of the shipment when it was destroyed and is liable to Pickens. Therefore, Pickens is entitled to its costs under § 14706(b).

The judgment of the district court is AFFIRMED.