

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00138-CV

**SOLO TRANSPORT**,
Appellant

v.

**STEALTH MODE PARTNERS LLC** dba Falcon Truck Bodies LLC,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2023-CVF-001175-D3
Honorable Rebecca Ramirez Palomo, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Adrian A. Spears II, Justice
                H. Todd McCray, Justice

Delivered and Filed: May 13, 2026

AFFIRMED

Stealth Mode Partners LLC dba Falcon Truck Bodies LLC ("Stealth Mode") sued Solo

Transport for damages to a shipment of sixteen truck bodies, asserting causes of action under the

Carmack Amendment. *See* 49 U.S.C. § 14706. The jury returned a verdict in favor of Stealth

Mode, and the court signed a final judgment in favor of Stealth Mode for $77,117.91.

In three issues on appeal, Solo Transport contends that: (1) the evidence is legally and

factually insufficient to support the jury finding it is a carrier under the Carmack Amendment; (2)

the evidence is legally and factually insufficient to support the jury finding Stealth Mode was not solely liable for the damage; and (3) the trial court had no subject matter jurisdiction to enter judgment on a Carmack Amendment claim.  Solo Transport timely appealed.  We affirm.

## I. Background

### A. The Shipment

Stealth Mode, through its agent Falcon Sheet Metal Industries ("Falcon"), manufactures truck bodies in Mexico for wholesale distribution.  In October 2022, Stealth Mode sold sixteen truck bodies ("the load") to Freedom Truck Equipment.  Stealth Mode orally contracted with Basi Logistics Group, Inc. ("Basi") to transport the load from Stealth Mode's manufacturing facility in Guanajuato, Mexico to Freedom Truck Equipment's yard in Richland Hills, Texas.  Basi did not issue a bill of lading for the load.  Stealth Mode provided Basi with a schematic in advance of transportation with details and instructions concerning how the truck bodies would be loaded onto the trailer for shipment.  The instructions included weight, height, dimensions, and other information.

Basi hired Solo Transport to arrange transportation.  Solo Transport hired Fletes Mex to transport the load for the first leg of the shipment, from Guanajuato, Mexico to the port of entry in Nuevo Laredo, Mexico.  Solo Transport hired H. Leon Carrier to transport the load for the second leg of the shipment, from Laredo, Texas to Richland Hills, Texas.

The load was arranged and loaded by Falcon onto a Fletes Mex trailer.  Falcon used wooden studs to separate the load.  The load arrived at Solo Transport's Laredo yard in damaged condition. Solo Transport reported the damage to Fletes Mex and to Basi, who reported the damage to Stealth Mode.  Basi instructed Solo Transport to proceed with delivery, and H. Leon Carrier transported

the load from Laredo to Richland Hills. Freedom Truck Equipment rejected the load because of the damage.

In August 2023, Stealth Mode filed suit asserting causes of action under the Carmack Amendment for negligence, conversion, and breach of contract. Stealth Mode sought to recover $84,200. Solo Transport filed its original answer generally denying the claims. Basi failed to appear and a default judgment was entered against it for $1,681,731.36 in monetary damages. H. Leon Carrier settled with Stealth Mode for $15,000.

## B. The Trial

In November 2024, Stealth Mode and Solo Transport proceeded to a jury trial. The parties stipulated "that the 16 truck bodies were tendered to a carrier in good condition and delivered to the recipient in damaged condition." The jury heard evidence that Solo Transport transported the load across the border from Nuevo Laredo, Mexico to Laredo, Texas.

Stealth Mode claimed Solo Transport was liable as a carrier or freight forwarder under the Carmack Amendment because it was involved in the "chain of transport." Solo Transport argued that it acted as a broker or shipper — not a carrier — and therefore was not liable. At the close of its case, Solo Transport moved for directed verdict arguing the evidence showed it functioned as a broker, which was denied by the trial court.

The Jury returned a verdict in favor of Stealth Mode, finding: (1) Solo Transport was a carrier; (2) the damages were not caused solely by the fault of Stealth Mode as the shipper; and (3) the total amount of loss was $84,200.00. Solo Transport filed a motion for judgment notwithstanding the verdict which was denied by the trial court. The trial court signed a final judgment in favor of Stealth Mode for $77,117.91, including pre-judgment interests and costs,

giving Solo Transport a credit of $15,000.00 for settlement paid by H Leon Carrier. This appeal followed.

## II. The Carmack Amendment

The Carmack Amendment to the Interstate Commerce Act is "a federal transportation statute that creates a uniform federal law regarding the liability of interstate carriers for lost or damaged goods." *Celadon Trucking Servs., Inc. v. Titan Textile Co.*, 130 S.W.3d 301, 303 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing 49 U.S.C. § 14706). The amendment "subjects a motor carrier transporting cargo in interstate commerce to absolute liability for 'actual loss or injury to property.'" *Tallyho Plastics, Inc. v. Big M Constr. Co.*, 8 S.W.3d 789, 792 (Tex. App.—Tyler 1999, no pet.) (quoting *Missouri Pac. R.R. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964)). "The Supreme Court has construed actual loss or damage broadly: 'The words of the statute are comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination.'" *BINL, Inc. v. United States*, 106 Fed. Cl. 26, 40 (2012) (quoting *Se. Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 29 (1936)).

"The Carmack Amendment unambiguously imposes the risk of error on one particular party, the carrier, to the exclusion of the other party, the shipper." *Natural Polymer Int'l Corp. v. FedEx Freight, Inc.*, No. 4:16-CV-00359, 2017 WL 3537324, at *5 (E.D. Tex. Aug. 17, 2017) (citing 49 U.S.C. § 14706(c) and *ABB Inc. v. CSX Transp., Inc.*, 721 F.3d 135, 145 (4th Cir. 2013)). "A shipper establishes its *prima facie* case under the Carmack Amendment when it shows delivery of the goods to the carrier in good condition, arrival in damaged condition, and the amount of damages." *Pac. Indem. Co. v. Pickens Kane Moving & Storage Co.*, 655 F. Supp. 2d 1023, 1026 (D. Ariz. 2009), aff'd sub nom. *Pac. Indem. Co. v. Atlas Van Lines, Inc.*, 642 F.3d 702 (9th Cir.

2011) (citing *Missouri Pac. R.R.*, 377 U.S. at 138). Solo Transport does not challenge Stealth Mode's prima facie case.

### III. Subject Matter Jurisdiction — Standing

For the first time on appeal, in its third issue, Solo Transport argues the trial court lacked jurisdiction to rule on Stealth Mode's claims because the Carmack Amendment did not apply to the shipment. Thus, we must determine "'whether [Stealth Mode] has been granted a right to sue by the statute under which [it] brings suit.'" *Nuclear Info. & Res. Serv. v. N.R.C.,* 457 F.3d 941, 950 (9th Cir. 2006) (quoting *City of Sausalito v. O'Neill,* 386 F.3d 1186, 1199 (9th Cir.2004)). Neither party categorized the question of subject matter jurisdiction as a question of standing. Because standing is a threshold question, we reorganize issue three to issue one and sua sponte review Stealth Mode's standing to bring a Carmack Amendment claim.

### A. Standard of Review

Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *Harris Cty. Flood Control Dist. v. Great Am. Ins. Co*., 309 S.W.3d 614, 617 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Standing is a constitutional prerequisite to obtaining judicial relief; and courts have no subject-matter jurisdiction over, and therefore must dismiss, claims made by parties who lack standing to assert them. *Heckman v. Williamson Cty*., 369 S.W.3d 137, 150 (Tex. 2012). "When an appellate court questions jurisdiction on appeal for the first time . . . and reviews the standing of a party sua sponte, it must construe the petition in favor of the party [seeking to invoke the court's jurisdiction], and if necessary, review the entire record to determine if any evidence supports standing." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

**B. Standing**

"When standing has been conferred by statute, the statute itself should serve as the proper framework for a standing analysis." *In re K.D.H.*, 426 S.W.3d 879, 883 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The Carmack Amendment confers standing to "the person entitled to recover under the receipt or bill of lading." 49 U.S.C. § 14706(a)(1). However, a carrier can still be held liable under the amendment — even where no receipt or bill of lading is issued. *See id.* ("Failure to issue a receipt or bill of lading does not affect the liability of a carrier."); *see also Pyramid Transp., Inc. v. Greatwide Dallas Mavis, LLC*, No. 3:12-CV-0149-D, 2013 WL 840664, at *4, n.7 (N.D. Tex. Mar. 7, 2013) (providing that Section 14706(a) means that "a carrier's liability to a party who is entitled to bring suit is not affected by the failure to issue a receipt or bill of lading."). Cases interpreting the Carmack Amendment have held that "consignors, holders of the bills of lading issued by the carrier, and persons beneficially interested in the shipment although not in possession of the actual bill of lading, in addition to shippers, have standing to sue under the Carmack Amendment." *Banos v. Eckerd Corp.*, 997 F. Supp. 756, 762 (E.D. La. 1998).

Based on its ownership interest of the truck beds, the subject of this lawsuit, Stealth Mode is beneficially interested in the shipment. *Id.*; *see also Shamoun v. Old Dominion Freight Line, Inc.*, No. 3:19-CV-2034-G, 2020 WL 570903, at *6 (N.D. Tex. Feb. 4, 2020) (holding that an owner of goods has standing to bring a claim under the Carmack Amendment even when no bill of lading had been issued). Accordingly, Stealth Mode has standing to bring a Carmack Amendment claim and the court had subject matter jurisdiction.

Therefore, Solo Transport's first issue is overruled.

## IV. Sufficiency of Evidence

### A. Standard of Review

"In a legal sufficiency challenge, we consider whether the evidence at trial would enable a reasonable and fair-minded fact finder to reach the verdict under review." *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). "Evidence is legally insufficient to support a jury finding when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact." *Id*. More than a mere scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair minded people to differ in their conclusions. *Id*. (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)). Conversely, less than a scintilla of evidence exists when the evidence offered to prove a vital fact's existence is "so weak as to do no more than create a mere surmise or suspicion." *Id*. (quoting *King Ranch*, 118 S.W.3d at 751). The evidence must be considered "in the light most favorable to the party in whose favor the verdict has been rendered" and "every reasonable inference deducible from the evidence is to be indulged in that party's favor." *Id*. (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

In reviewing a factual sufficiency challenge, we should set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). We examine the entire record, considering both the evidence in favor of and contrary to the challenged finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). If we determine that the evidence is factually insufficient

to support the jury's findings, we must "detail the evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam) (quoting *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)).

Whether reviewing the legal or factual sufficiency of the evidence, the factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819.

## B. Carrier vs. Broker or Shipper

In its second issue, Solo Transport argues that the evidence is legally and factually insufficient to support the jury's determination that it was a carrier. Specifically, it argues that "the evidence conclusively proved" that it acted as a broker and shipper, not as a carrier. However, the jury was not asked to determine whether Solo Transport acted as shipper, but rather to determine whether Solo Transport acted as a broker, carrier, or freight forwarder. Accordingly, our review will focus on whether the evidence was sufficient to prove Solo Transport acted as a carrier or broker.[1] The jury charge defined a carrier as "a person providing motor vehicle transportation for compensation[.]" It defined a broker as "a person, other than a motor carrier or employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiate[s] for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by a motor carrier for compensation."

---

[1] "The difference between a carrier and a broker is often blurry." *Neb. Turkey Growers Coop. Ass'n v. ATS Logistics Servs., Inc.*, No. 4:05CV3060, 2005 WL 3118008, at *4 (D. Neb. Nov. 22, 2005) (citing *Delta Research Corp. v. EMS, Inc.*, No. 04–60046, 2005 WL 2090890, at *5 (E.D. Mich. Aug. 29, 2005). "The crucial distinction is whether the party legally binds itself to transport, in which case it is considered a carrier." *Id*. (citing *CGU Int'l Ins., PLC v. Keystone Lines Corp.*, No. C-02-3751 SC, 2004 WL 1047982, at *2 (N.D. Cal. May 5, 2004)). "Whether a company is a broker or a carrier/freight forwarder is not determined by how it labels itself, but by how it holds itself out to the world and its relationship to the shipper." *Id*. (citing *Lumbermens Mut. Cas. Co. v. GES Exposition Services, Inc.*, 303 F.Supp.2d 920, 921 (N.D. Ill. 2003)).

To prevail in a factual sufficiency challenge, Solo Transport was required to show that the evidence was contrary to the jury's finding or that the evidence overwhelmingly proved that it was a broker. It first highlights the bill of lading, which indicates that H. Leon Carrier is the carrier that received the shipment of sixteen truck beds in Laredo from Solo Transport on October 12, 2022, and would deliver the shipment to Freedom Truck Equipment in Richland Hills. It cites the dispatch confirmation[2] it issued, which lists the carrier as H. Leon Carrier, the pickup location as Solo Transport's Laredo yard, and the delivery location as Freedom Truck Equipment's Richland Hills yard. It also cites to the testimony of Stealth Mode's President, Edon Moyal, who testified that Stealth Mode was not listed on the bill of lading. This evidence does not demonstrate Solo Transport acted as merely a broker or that it was not a carrier.

Next, Solo Transport argues that the act of transporting a load across the border from Mexico to Texas is a "switching service," and that "the mere act of providing a switching service at a destination does not equate to becoming liable [as a carrier] under the Carmack Amendment." It points to the Carmack Amendment's language, which states "[a] delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination." 49 U.S.C. § 14706(a)(1). However, as Stealth Mode points out, Solo Transport "never raised this argument at any time during trial and failed to request any jury charge definition or instruction about a 'switching service' or any modification to the definition of a 'Motor Carrier' in the jury charge that would provide any exemption for a 'switching service.'" "To preserve error for consideration on appeal, a party must make a timely objection or request and obtain a ruling." *Yazdi v. Republic Ins. Co.*,

---

[2] The dispatch confirmation indicates that Solo Transport does business as "Solo Brokerage." Whether a party is a broker or carrier is not based on what a party labels itself, but rather on how it represents itself and its relationship with the shipper. *Id.*

935 S.W.2d 875, 878 (Tex. App.—San Antonio 1996, writ denied). "Complaints regarding the jury charge must be specifically preserved by objections or written requests, as appropriate, before the charge is read to the jury." *Id.* "When a definition is omitted from the charge, the party requesting that it be included must tender, in writing, a substantially correct definition of the term." *Id.* Thus, Solo Transport failed to preserve this issue for appeal.

Jose Arturo Roldan Rodriguez, Fletes Mex's terminal manager, testified that Fletes Mex dropped off the load at its terminal in Nuevo Laredo, Mexico, and that Solo Transport moved the load across the border to Laredo, Texas. Moyal testified that the load remained on the Fletes Mex truck bed and was transported by "[a] Solo Transport truck," Solo Transport picked the load up, and that he understood Stealth Mode was involved in the transportation as a carrier. The demand letter Solo Transport sent Stealth Mode states that Solo Transport would "proceed with [its] rights as a carrier" if it did not receive $13,700 in fees for the transportation, loading, and storage of the load.

Coupled with Solo Transport's inability to explain how the bill of lading proved that the verdict was manifestly unjust, the evidence discussed above is legally and factually sufficient to support the jury's verdict that Solo Transport was a carrier. The evidence surpasses a mere scintilla of competent evidence and is legally sufficient. *See City of Keller*, 168 S.W.3d at 810–11. Additionally, having examined the evidence under the factual sufficiency standard of review, we find that the jury could have found that Solo Transport was a carrier and that such a finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *See Mar. Overseas Corp.*, 971 S.W.2d at 406–07.

Therefore, Solo Transport's second issue is overruled.

**C. Damages**

In its third issue, Solo Transport argues that the evidence is legally and factually insufficient to support the jury's determination that the damage to the truck bodies was not caused solely by the fault of Stealth Mode as the shipper. Specifically, Solo Transport argues that "the jury erred in finding that Stealth Mode, acting as the shipper, did not cause damage to the truck bodies." The jury charge did not ask the jury to determine whether Stealth Mode contributed to the damage, but rather whether Stealth Mode *solely* caused the damage.

Solo Transport references multiple exhibits to support its argument that the truck bodies were damaged by Stealth Mode before transportation during loading, including loading instructions and photos. At the trial, the parties stipulated "that the 16 truck bodies were tendered to a carrier in good condition and delivered to the recipient in damaged condition." Accordingly, our review is confined. *See Airpro Mobile Air, LLC v. Prosperity Bank*, 631 S.W.3d 346, 350 (Tex. App.—Dallas 2020, pet. denied) ("An appellate court does not review the legal or factual sufficiency of the evidence of stipulated facts.").

Next, Solo Transport highlights Moyal's testimony that the wooden studs used by Stealth Mode to stack the truck bodies could have caused damage during shipment. Stealth Mode responds by highlighting the testimony of Falcon's director, Jorge Armando Sosa Solis. Sosa Solis testified that Falcon regularly uses wooden studs to separate the truck bodies, there have been no prior instances of damage from such use, the truck bodies were not damaged at the time of loading, the truck bodies were not damaged by the wooden studs, and damage must have happened in transit as the result of significant force.

The evidence here surpasses a mere scintilla of competent evidence and is legally sufficient. *See City of Keller*, 168 S.W.3d at 810–11. Additionally, having examined the evidence

under the factual sufficiency standard of review, we find that the jury could have found that Stealth Mode was not solely responsible for the damage caused to the load and that such a finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *See Mar. Overseas Corp.*, 971 S.W.2d at 406–07.

Therefore, Solo Transport's third issue is overruled.

## V. Conclusion

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice