Filed 3/24/15

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

**(Sacramento)**

**----**

| | |
|---|---|
| BETTY T. YEE, as State Controller, etc., et al., | C075248 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2013-00144517-CU-MC-GDS) |
| v. | |
| AMERICAN NATIONAL INSURANCE COMPANY, | |
| Defendant and Appellant. | |

 

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge. Reversed.

Greer, Herz & Adams, Kelly-Ann F. Clarke; Quinn Emanuel Urquhart & Sullivan, Steven G. Madison and Michael E. Williams for Defendant and Appellant.

Sidley Austin, Carol Lynn Thompson, Nicole M. Ryan, Emily A. Caveness and Mark E. Haddad for United Insurance Company of America, The Reliable Life Insurance Company, and Reserve National Insurance Company as Amici Curiae on behalf of Defendant and Appellant.

Cozen O'Connor, Andrew B. Kay, Catherine R. Reilly; Pillsbury Winthrop Shaw Pittman, Thomas V. Loran III and Andrew D. Lanphere for Thrivent Financial for Lutherans as Amicus Curiae on behalf of Defendant and Appellant.

State Controller's Office, Richard J. Chivaro; Kaye Scholer, Steven S. Rosenthal, Marc S. Cohen, Alicia Clough and Michael K. Robertson, for Plaintiffs and Respondents.

Consistent with unclaimed property laws nationwide that derive from a uniform act on the subject, California's Unclaimed Property Law (the UPL; Code Civ. Proc., § 1500 et seq.)[1] is remedial legislation with a dual objective. That dual objective is to end the fortuitous enrichment of holders of unclaimed property; and to return such property to its rightful owner or, if that is not possible, to the state (i.e., escheat) for public benefit rather than for private gain. (See 13 Witkin, Summary of Cal. Law (10th ed. 2005) Personal Property, §§ 36-38, pp. 44-46; *Goldstein v. PHH Corp.* (Md.Ct.Spec.App. 1998) 717 A.2d 950, 951-952 [123 Md.App. 214, 217-218] (*PHH Corp.*).)

At issue in this appeal is section 1571, subdivision (a) (hereafter section 1571(a)) of the UPL, which states: "The [State] Controller may at reasonable times and upon reasonable notice examine the records of any [entity] if the Controller has reason to believe that the [entity] is a holder [of property] who has failed to report property that should have been reported pursuant to [the UPL]." Pursuant to this section, the trial court here granted a preliminary injunction to plaintiff, the State Controller (the Controller), to examine the records of defendant American National Insurance Company, a life insurance company (American National).

We conclude: (1) The trial court erred in granting the preliminary injunction—which mirrored the Controller's request for a permanent injunction—because the court did so without a trial on the merits; (2) the standard of "reason to believe" in section

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

1571(a) means specific articulable facts that would justify a belief by a reasonable person, knowledgeable in the field of unclaimed property, that an entity was not reporting property as the UPL requires (and one way in which this standard can be met is if the suspected holder of unreported property has been chosen for record examination pursuant to a general administrative plan to enforce the UPL that is based on specific neutral sources); and (3) that if the Controller proves, at trial on the merits, the significant facts underlying its preliminary injunction request, the Controller will have met this "reason to believe" standard with respect to examining the records of American National's in-force policies. Accordingly, we reverse the preliminary injunction order and remand for further proceedings.

We will proceed immediately to discuss these conclusions, and set forth in those discussions the pertinent facts. As we shall explain, these conclusions are as far as we can go on the truncated record before us.

## DISCUSSION

### I. The Trial Court Erred in Granting the Preliminary Injunction

#### A. *Contention*

In deciding whether to issue a preliminary injunction to a plaintiff, a trial court must weigh two interrelated factors: (1) The plaintiff's likelihood of success on the merits at trial, and (2) the harm to the plaintiff if the injunction is not issued against the harm to the defendant if it is. (*Butt v. State of California* (1992) 4 Cal.4th 668, 677-678.) On appeal, we determine whether the trial court's decision was an abuse of discretion. (*Id.* at p. 678.)

American National contends the trial court abused its discretion by ignoring the irreparable injury American National would suffer from a *preliminary* injunction that granted the Controller the *ultimate* relief the Controller sought in its lawsuit; in short,

3

says American National, the trial court's decision deprived it of an opportunity to defend itself on the merits. We essentially agree.

## B. *Background*

Pursuant to a multistate investigation that California joined to determine life insurance industry compliance with state laws on unclaimed property—an investigation that included a look into the procedures the life insurance industry uses to determine if insureds have died or otherwise reached the payable limiting age—the Controller, which is the UPL's administrator (§§1560, 1572), sought to examine, under the authority of section 1571(a), records of American National.[2]

The Controller and American National went back and forth over *what* records the Controller could examine. This dispute eventually centered on American National's refusal to allow the Controller to examine its in-force life insurance policies.

To resolve the dispute, the Controller sued American National for injunctive relief under section 1572. Section 1572 allows the Controller to file a lawsuit to undertake record examination authorized by section 1571. (§ 1572, subd. (a)(1).)

In its complaint, the Controller requested preliminary and permanent injunctive relief enjoining American National from refusing to comply with the UPL and requiring American National to (1) permit a full and timely examination of all its books and records; (2) provide full and accurate responses to all data requests from the Controller, including the policy data download for all life insurance policies and annuity contracts currently in force and that have been in force going back to January 1, 1992 (with the

---

[2] As one would expect, a life insurance policy can become payable under the UPL when the insured dies. It can also become payable under the UPL when the insured reaches a certain "limiting age;" that is, the age at which the insurer presumes the insured has died and there has been no contact with the insured or the beneficiary during a three-year dormancy period. (§ 1515, subd. (c)(1), (3).)

4

fields that were provided in the sample policy data download); (3) provide prompt access to knowledgeable personnel; (4) respond promptly to all questions asked in the audit process; (5) provide data and information in a form reasonably calculated to be auditable; and (6) confirm that all current company procedures have been produced for determining death and annuity payouts that require escheatment by operation of law.

The trial court heard, and then granted, the Controller's preliminary injunction request, as specified in the preceding paragraph. The trial court did so after denying the Controller's motion to consolidate the trial on the merits with the preliminary injunction hearing; and after denying American National's motion to continue the preliminary injunction hearing to allow American National to obtain discovery before the hearing.

## C. *Analysis*

If a lawsuit seeks a preliminary and a permanent injunction, as the Controller's lawsuit does here, the order for a preliminary injunction does not determine the ultimate right to a permanent injunction—i.e., a preliminary injunction is not a determination on the merits—unless the question before the trial court is one of law alone that can be resolved without resort to extrinsic or additional evidence. (*Camp v. Board of Supervisors* (1981) 123 Cal.App.3d 334, 357-358; *Anderson v. Joseph* (1956) 146 Cal.App.2d 450, 454; see 6 Witkin, Cal. Procedure (5th ed. 2008) Provisional Remedies, §§ 285, 287, pp. 225-227.) Were the law otherwise, it would provide a handy guide for how to succeed in a lawsuit without really trying—i.e., how to obtain permanent relief preliminarily.

Here, the question whether the Controller had "reason to believe" that American National had failed to report property that should have been reported under the UPL is not a question of law alone that can be resolved without resort to extrinsic evidence. This is borne out by the evidence the Controller itself has presented on that question. (§ 1571(a); see the Factual Background at pt. II.B. of the Discussion, *post*, pp. 7-8.) The

5

trial court's preliminary injunction order effectively decided the merits of the Controller's lawsuit—i.e., that order effectively granted the requested permanent injunction. Consequently, the trial court abused its discretion in granting the Controller the preliminary injunction. We must reverse that order.[3]

For guidance on remand, we will define the "reason to believe" standard. We turn to that issue now.

## II. The "Reason to Believe" Standard

### A. *Contention*

American National contends the Controller had no "reason to believe" that American National had failed to report property under the UPL concerning its active, in-force policies, because the UPL, under section 1515, subdivision (a), imposes a duty to report life insurance or annuity contract funds only when, according to company records, those funds are due and payable and have been unclaimed and unpaid for more than three years.[4] This contention, in part, implicates the definition of the "reason to believe" standard. We will define that standard and explain how it may play out here; but that is as far as we can go in light of the necessarily truncated preliminary injunction proceedings before us. Before we do that, however, we must provide some factual background.

---

[3] In light of our reversal of the preliminary injunction, we need not consider American National's further contention that the trial court erred in *presuming* irreparable injury to the Controller based on the Controller's status as a public entity.

[4] Section 1515, subdivision (a) states as pertinent: "[F]unds held or owing by a life insurance corporation under any life . . . insurance policy or annuity contract which has matured or terminated escheat to this state if unclaimed and unpaid for more than three years after the funds became due and payable as established from the records of the corporation."

6

## B. *Factual Background*

In its request for a preliminary injunction, the Controller presented the following evidence.

There have been long-standing practices in the life insurance industry whereby insurers have allowed life insurance policies to remain designated as "in force" long after the insureds have died; and insurers have done this by not taking reasonable steps to identify these deceased insureds. One such practice, for example, concerns antiforfeiture provisions in life insurance policies. These provisions automatically pay due and unpaid premiums out of a policy's built-up cash value; where an insured has died and therefore fails to pay premiums when due, the cash value in the policy may be entirely depleted over time if an insurer fails to take appropriate actions to learn of the insured's death. These practices persist notwithstanding the existence of accurate and long-accessible death records, such as the Social Security Administration's Death Master File.

Hundreds of millions of dollars in life insurance proceeds go unclaimed annually. The National Association of Insurance Commissioners estimates that unpaid life insurance benefits exceed $1 billion nationwide.

In 2009, as part of a nationwide investigation concerning how life insurers determine if insureds have died, an auditing company (Xerox Unclaimed Property Clearinghouse—UPCH) began an unclaimed property audit of American National on behalf of multiple states. In 2012, California joined this audit of American National, retaining UPCH as its auditor; by this point, the audit of American National had already uncovered significant potentially escheatable property.

UPCH—which is the largest auditor of unclaimed property in the United States, having provided such services to over 18,000 organizations—has concluded that American National's audit-based document production, pursuant to the multistate unclaimed property audit, is incomplete. For example, based on American National's

7

2010 Annual Statement, UPCH expected to receive data for over one million insurance policies and annuity contracts for which American National had not processed or paid a death benefit; instead, UPCH received only 200,000.

By the time the Controller requested a preliminary injunction against American National in 2013, the Controller had initiated audits of over 40 life insurance companies (pursuant to California's role in the multistate unclaimed property audit). The Controller has reached agreements to resolve audits of 18 life insurance companies, with an aggregate value of $266.7 million to California beneficiaries and approximately $2.4 billion nationally.[5] Every life insurance company that has been audited in the multistate unclaimed property audit has been found to have unclaimed property that the respective company does not dispute is reportable to California. As one example, an internal audit in 2007 that MetLife Insurance Company undertook found $80 million in unclaimed life insurance proceeds. After MetLife's self-audit, an independent audit spearheaded by the Controller found hundreds of millions of dollars worth of additional unclaimed property.

In deciding to conduct an unclaimed property audit of American National, the Controller relied upon both the fact that numerous other states had decided to audit American National and that UPCH had recommended such an audit.

### C.  *Reason to Believe Standard—Defined, and How to Be Applied Here*

Section 1571(a) is a remedial statute that involves an administrative examination of a regulated entity's records to unearth an undeserved private windfall. Because of this, the standard of "reason to believe" (or reasonable belief) is certainly "no stricter" than the constitutional standard the United States Supreme Court applies when an administrative agency is required to seek a search warrant to inspect the premises of a regulated business

---

[5]  The record is unclear whether these aggregate values specify amounts of unclaimed property or levels of business within the specified jurisdiction or something else.

for compliance with governing law. So concludes *Lincoln Bank & Trust Co. v. Oklahoma Tax Comm'n.* (1992) 827 P.2d 1314 [1992 Okla. 22] (*Lincoln Bank*), a decision from the Oklahoma Supreme Court that construed the phrase "reason to believe" in a state statute substantively identical to section 1571(a). (*Lincoln Bank*, at p. 1322.) *Lincoln Bank* involved the statutory administrator's request to inspect a bank's financial records for compliance with Oklahoma's unclaimed property law. This request was based largely on evidence that the bank had not reported items consistently reported by other comparably sized banks, and that noncompliance with the unclaimed property law was " 'widespread' " among Oklahoma banks; out of the 75 banks that had been examined, all had unreported property. (*Lincoln Bank*, *supra*, 827 P.2d at pp. 1315, 1323.)

The United States Supreme Court decision relied on by *Lincoln Bank* in defining the "reason to believe" standard is *Marshall v. Barlow's, Inc.* (1978) 436 U.S. 307 [56 L.Ed.2d 305] (*Marshall*). In *Marshall*, the administrative search warrant standard was deemed satisfied—in the context of a search involving a business's compliance with the Occupational Safety and Health Administration Act—" 'not only on specific evidence of an existing violation [of governing law],' " but also " 'on the basis of a general administrative plan for the enforcement of the [governing law] derived from neutral sources.' " (*Lincoln Bank*, *supra*, 827 P.2d at p. 1322, quoting *Marshall*, *supra*, 436 U.S. at pp. 320-321 [56 L.Ed.2d at p. 316].) *Lincoln Bank* concluded the "reason to believe" standard was no stricter than this, and upheld the record examination there as a general administrative plan of enforcement based on neutral sources. (*Id.* at p. 1323.) We find *Lincoln Bank* persuasive.[6]

---

[6] The debate about whether the *Marshall* standard is properly based on the legal theory of "implied consent" to search or on the theory of "reasonable expectation of privacy," is

But we find even more persuasive the decision in *PHH Corp.*, *supra*, 717 A.2d 950 [123 Md.App. 214]. In *PHH Corp.*, the Maryland Court of Special Appeals expanded the *Lincoln Bank* standard in construing a substantively identical statute to section 1571(a), in the context of an administrative examination of a leasing company's records. (*PHH Corp.*, *supra*, 717 A.2d at pp. 951, 953 [123 Md.App. at pp. 216, 220].) *PHH Corp.* reasoned that a specific violation of law or a general plan of enforcement are not the exclusive means by which the "reason to believe" standard can be met. (*PHH Corp.*, *supra*, 717 A.2d at pp. 958-959 [123 Md.App. at p. 232].) *PHH Corp.* held the standard is met whenever the statute's administrator can point to "specific articulable facts that would justify a belief by a reasonable person, knowledgeable in the field of unclaimed property, that a person or business entity [is] not reporting [unclaimed] property as required by the [unclaimed property law]." (*Id.* at p. 959 [123 Md.App. at p. 232].)

We adopt the *PHH Corp.* "reason to believe" standard as the standard applicable to section 1571(a). We now apply that standard, to the extent possible, on the limited record before us.

At its core, the Controller's section 1571(a) record examination of American National seeks to verify whether policies listed by American National as in force are, legitimately, in force—for example, whether the cash value of policies is being used to pay premiums to keep policies in force after insureds die. As noted, American National, relying on section 1515, subdivision (a) of the UPL, contends the Controller could have no "reason to believe" that American National has failed to report property under the UPL concerning its active, in-force policies, because the UPL imposes a duty to report life insurance proceeds only when those proceeds are due and payable and have been

---

a debate irrelevant to our analysis here. (See *People v. Maikhio* (2011) 51 Cal.4th 1074, 1093, fn. 8.)

unclaimed and unpaid for more than three years according to company records. (See fn. 4, *ante*.)

The trial court's preliminary injunction ruling cogently decimates American National's contention: "The purpose of the [section 1571(a)] audit is to allow the State to review all potentially escheatable property. . . . [The Controller] does not, and need not, accept [American National's] word that it has, on its own, correctly identified and segregated its own 'in-force policies.' The very purpose of the audit is to *verify* the information contained in [American National's] books and records, to *verify* whether the company has, in fact, been in contact with policyholders in the last three years, to *verify* the company's representations that policyholders have been paying the premiums, and to otherwise review [American National's] data and underlying records to ensure that the company has not failed to identify and report unclaimed property that should have been reported . . . ."

We also find that the Controller will meet the "reason to believe" standard we have adopted here if the Controller can establish, at trial on the merits, the significant facts set forth above in the Factual Background of this Discussion (see pt. II.B., *ante*, pp. 7-8). In doing so, the Controller will have shown the requisite "specific articulable facts" by showing that its record examination of American National proceeded from a general plan of UPL enforcement based on neutral sources.

But because the proceedings before us are so truncated (i.e., whether a *preliminary* injunction should have been issued), our review on appeal is necessarily truncated. To be clear, we have decided only (1) that the trial court erred in granting the preliminary injunction; (2) that the "reason to believe" standard of section 1571(a) is defined in terms of the "specific articulable facts" principle set forth above; and (3) that if the Controller proves, at trial on the merits, the significant facts underlying its preliminary injunction request, the Controller will have met this "reason to believe" standard with respect to

11

examining the records of American National's in-force policies.[7]  Because of the limited record before us, we have not decided, for example, the precise scope of the record examination or how it will proceed (for example, whether particular records the Controller seeks to examine are reasonably relevant to this inquiry, or whether the production of records requested by the Controller is impermissibly burdensome).

## DISPOSITION

The order granting the preliminary injunction to the Controller is reversed.  We remand this matter to the trial court for further proceedings consistent with this opinion. American National is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278 (a)(2).)[8]  (***CERTIFIED FOR PUBLICATION***)


                                BUTZ           , J.


I concur:


        BLEASE       , Acting P. J.

---

[7]  Our reference to the Controller proving at trial "the significant facts underlying its preliminary injunction request" is simply meant to illustrate one way in which our "reason to believe" standard may be satisfied—this reference is not meant to circumscribe in any way the evidence that may be presented at trial; obviously, if the Controller does not prove at trial these facts, the trial court is not obligated, pursuant to this example of one way in which our "reason to believe" standard may be satisfied, to find that the "reason to believe" standard has been satisfied.

[8] We deny the judicial notice requests of American National (which encompassed a San Francisco Superior Court ruling) and of amici United Insurance Company, et al. (which included this ruling as well).  We also deny the Controller's motion to strike evidence offered in support of the amicus curiae brief of Thrivent Financial for Lutherans.

Hull, J., Concurring and Dissenting

I concur in the majority's holding that (1) the trial court erred in granting the preliminary injunction because the court did so without a trial on the merits, and (2) the standard of "reason to believe" as set forth in Code of Civil Procedure section 1571, subdivision (a) means specific articulable facts that would justify a belief by a reasonable person, knowledgeable in the field of unclaimed property, that an entity was not reporting property as the Unclaimed Property Law (UPL) requires.

As to the majority's final holding, that "if the Controller proves, at trial on the merits, the significant facts underlying its preliminary injunction request, the Controller will have met this 'reason to believe' standard with respect to examining the records of American National's in-force policies," we part company and I dissent.

In my view, once we have determined the trial court has erred and we return the matter to the trial court for an evidentiary hearing on the merits, the appropriate course is to allow the trial court to conduct the necessary hearing with the opportunity for the parties to present relevant evidence and then for the trial court to determine, in the first instance, whether the Controller has proven that there is reason to believe that appellant has not reported property as the UPL requires. This court cannot know, at this juncture, the scope of the evidence to be presented by the parties in the trial court on both sides of the question and cannot know the credibility of that evidence. It may be that, on a full evidentiary hearing on the matter, the "significant facts" underlying the preliminary injunction request are not the whole story on the issue of "reason to believe."

While I recognize that the majority's holding on this point appears to be that, if the Controller proves up the significant facts underlying the Controller's preliminary injunction request with credible evidence, the Controller should prevail, it seems to me to make the outcome of that hearing is thus preordained by this court. That is, the majority opinion can be read to say that, upon the presentation of certain facts, there should be a certain outcome that is, a finding of "reason to believe." It appears to leave no room for

1

the trial court, upon a fuller consideration of all of the relevant evidence on the point, to decide in the first instance whether that evidence establishes the necessary "reason to believe" under the standard we have articulated in this decision.

By taking this final step, the majority gives with one hand and takes away with the other. It agrees with appellant that the court erred and that the matter must be remanded for a full evidentiary hearing in the trial court, but then says, in my view, if the Controller presents the very same evidence on remand that it did in support of the Controller's preliminary injunction request, the Controller shall prevail. Appellant's opportunity to prove, based on evidence that this court does not now know, that there is not reason to believe that appellant is not fulfilling its responsibilities under the UPL seems, at best, evanescent.

While I agree that the law requires a full evidentiary hearing in the trial court, one must wonder about its practical necessity when this court, in effect, predicts its outcome.

And, while I appreciate that the majority has noted that its reference to evidence sufficient to constitute a "reason to believe" appellant is in violation of the UPL is "simply meant to illustrate one way in which our 'reason to believe' standard may be satisfied" and is not meant to "circumscribe . . . the evidence that may be presented at trial" (Maj. opn. page 12, fn. 8) that should be of little comfort to appellant once this court has said, in effect, that if the Controller proves up later what the Controller proved up before, the Controller shall win.

I do not know what evidence may be presented in the trial court that would lead to a different result. But that is the point. While I cannot know that, nor can the majority.

In effect, the majority's holding today takes away the trial court's discretion to decide whether there is reason to believe appellant is violating the UPL if, in the trial court's view, the very same evidence does not constitute a reason to believe there is a violation under the standard we state today.

2

I would let this matter hereafter follow the normal procedural course.  It should be remanded to the trial court for a full evidentiary hearing.  The trial court should consider the evidence giving it what credibility it deserves, thus deciding the facts and then deciding whether those facts constitute a reason to believe the appellant is violating the UPL under the standard we set today.  If one of the parties disagrees with that determination, it is free to return the matter to us on appeal for our review.

      HULL      , J.