Filed 7/7/21 McKissock v. Kashfian CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN MCKISSOCK,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BARRY KASHFIAN,<br><br>    Defendant and Appellant. | B303943<br><br>Los Angeles County<br>Super. Ct. No. YC070587 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ramona G. See, Judge. Affirmed.

Law Offices of Kenneth Gaugh and Kenneth Gaugh for Defendant and Appellant.

Spierer Woodward Corbalis & Goldberg, Steven F. Sprier, Stephen B. Goldberg and Michelle R. DeMason for Plaintiff and Respondent.

# INTRODUCTION

This is the second appeal in a commercial property dispute involving plaintiff John McKissock and defendant Barry Kashfian. In the first appeal, we reversed the trial court's order issuing a preliminary injunction in McKissock's favor. (*McKissock v. Kashfian* (Apr. 25, 2018, B275929) [nonpub. opn.] (*McKissock I*).) Now, Kashfian appeals from a judgment entered after a jury found him liable for nuisance, breach of contract, and breach of the conditions, covenants, and restrictions (CC&Rs) governing the complex where McKissock's former office suites and Kashfian's current office are located and awarded McKissock $1.725 million in damages. Kashfian contends the court prejudicially erred by, among other things, submitting the issue of liability to the jury. We reject Kashfian's arguments and affirm the judgment.

# FACTUAL BACKGROUND

## 1. The Property

McKissock, a plastic surgeon, leases an office in Lomita. Around 2014, he began looking to purchase his own office. He found adjacent suites for sale on the second floor of the Peninsula Medical Plaza (Medical Plaza) in Torrance. Kashfian, a dentist and prosthodontist, owns an office directly below those suites.

The Medical Plaza wasn't designed for medical offices, but it was later converted to that use. Consequently, many of the building's vacant units, including the ones McKissock found, lacked proper drainage, sewage, and other utilities necessary to operate his practice. Other doctors who purchased offices in the Medical Plaza before McKissock, including Kashfian, had

2

renovated their units to install the utilities necessary for their practices.

Before purchasing the suites, McKissock obtained and reviewed a copy of the Medical Plaza's CC&Rs, and he had a contractor review the city's original plans for the building.[1] McKissock also had the contractor and an architect inspect the suites he was considering purchasing. During his walkthrough, McKissock's contractor found what appeared to be sewer line connections inside the suites. The connections sat directly above Kashfian's office. The city's plans also showed a four-inch vertical sewer pipe that originated in Kashfian's office. According to the plans, the pipe served Kashfian's office, the second-floor suites McKissock was considering purchasing, and suites on the third floor located directly above those suites.

McKissock met with several people who owned offices in the Medical Plaza, including Kashfian, to discuss his plans to purchase the second-floor suites and retrofit them to accommodate his plastic surgery practice. When McKissock spoke to Kashfian about potentially needing to access Kashfian's office to install or replace utility lines necessary for McKissock's plastic surgery practice, Kashfian told McKissock that it would be "fine" so long as McKissock limited the construction work inside

---

[1] The court admitted numerous exhibits into evidence at trial, including the city's plans, photographs of various parts of the Medical Plaza, and several emails related to the underlying property dispute. Aside from the CC&Rs, Kashfian has not included any of the exhibits as part of the record on appeal.

3

Kashfian's office to nights and weekends and the finished product didn't exceed the common area[2] surrounding Kashfian's office.

In June 2014, McKissock purchased the suites. After McKissock bought the property, he and his contractor discovered that the four-inch sewer pipe depicted in the city's plans "wasn't there anymore." Although the pipe originally ran up through and connected to a restroom in Kashfian's office before connecting to McKissock's suites, Kashfian had since converted that restroom into a consulting room and apparently removed the pipe. Indeed, there was a patch on the Medical Plaza's roof in the location where the pipe should have terminated, indicating someone had removed the pipe after the Medical Plaza was built. The contractor opined that had the four-inch sewer pipe not been removed, it would have made it "considerably easier" for McKissock to retrofit his suites to accommodate his practice.

The contractor also found a plumbing line, a water line, and a drain for a water fixture, the outlets for all of which had been "stubbed out," inside McKissock's suites. Those connections were located directly above Kashfian's office, and they were served by a main sewer line located below Kashfian's office. According to the contractor, the main sewer line served McKissock's suites.

McKissock also discovered that Kashfian filled nearly all of the common area between the bottom side of McKissock's floor and the top side of Kashfian's ceiling with wires, pipes, and duct work, leaving little to no room for other owners to run utilities through that space. Kashfian's overcrowding of the common area

---

[2] The Medical Plaza's common areas are defined by the building's CC&Rs, which we discuss in detail below.

made it difficult for McKissock to locate his other utility connections. Kashfian also installed door frames that encroached into the common area above his office and, in one area of his office, he had completely eliminated the common area, taking the dry wall of his ceiling up to the underside of the joists of McKissock's floor.

After purchasing the suites, McKissock approached Kashfian again to inquire about obtaining access to Kashfian's office to connect McKissock's suites to the underground sewer line. Kashfian initially cooperated, allowing McKissock's contractor to inspect the interior of his office as well as the utilities and plumbing running through the surrounding common area. Kashfian also provided the contractor with a set of the office's "proposed" plumbing plans. According to McKissock, once the contractor discovered that the main sewer line ran underneath Kashfian's office, Kashfian stopped cooperating.

McKissock and his contractor determined it wasn't feasible to complete all the construction necessary to retrofit McKissock's suites to accommodate his medical practice without access to Kashfian's office. Consequently, McKissock sold his suites in the Medical Plaza in 2018. Between the time McKissock purchased and sold the suites, he continued paying rent for his office in Lomita.

## 2. The Medical Plaza's CC&Rs

Each suite in the Medical Plaza is governed by CC&Rs, which were drafted and recorded in December 2007 by LA-Peninsula Medical, LLC, the original common owner of the Medical Plaza. The CC&Rs set forth the respective rights and responsibilities of the original common owner, the Medical

Plaza's owners' association, and the individual owners of suites in the Medical Plaza.

Under the CC&Rs, a suite consists of "the space bounded by and contained within the interior finished surfaces of the perimeter walls, ceilings or roofs … of each unit." The upper boundary of a suite located on the ground or second floor is the "interior underside of the ceiling" of such suite. The space between exterior walls dividing separately owned suites qualifies as a common area under the CC&Rs.

Section 2.2.b of the CC&Rs provide that "[e]ach Owner shall have, as appurtenant to its [suite], an undivided common ownership in the Common Area[,] … [and] [e]ach [suite] shall have appurtenant to it nonexclusive easements for ingress, egress and support through the Common Area." The common areas, which are "owned in common by each of the [o]wners," include "land, parking, driveway areas; trash enclosures; conduits, pipes, plumbing, wires, and other utility installations (except the outlets thereof when located within any [suite]) … required to provide power, light, telephone, gas, water, sewage, drainage, and elevator service." The common areas also include "[t]he plumbing, sewer, electric wiring, telephone cables, and other utilities and services located in the floor areas of a [suite] or inside of the perimeter walls of such [suite]," except "any wires, pipes, conduits, cables, and the like … which connect facilities servicing [a suite]," which are "owned, maintained, and installed by the Owner as Restricted Common Area from the point of connection with the common Lines to the point where the Lines terminate in the Owner's [suite]."

Section 2.2.b also places limitations on each owner's use of the common areas. Specifically, each owner may use the common

6

areas for "the purposes for which they are intended without hindering the exercise of or encroaching upon the rights of any other Owners."

Section 4.6.a provides each owner of a suite in the Medical Plaza easements over other owners' suites to make use of utility lines and connections installed within the Medical Plaza that serve that particular owner's suite. Specifically, section 4.6.a of the CC&Rs provides: "Wherever sanitary sewer line connections, water line connections, electricity, gas, telephone, communication and cable television lines or drainage facilities are installed within the [Medical Plaza], the Owners of any [suites] served by said connections, lines or facilities shall have the right to … easements over each Owner's [suite] to the full extent necessary for the full use and enjoyment of such portion of such connections which service such [suite] … ." That section also provides that an owner of a suite in the Medical Plaza shall also have the right "to enter upon any [suites] owned by any other Owner, or to have utility companies enter upon such areas, in or upon which said connections, lines, or facilities, or any portion thereof are situated, to repair, replace and generally maintain said connections as and when the same may be necessary … , provided that such Owner or utility company shall promptly repair any damage caused by such entry as promptly as possible after completion of work thereon."

Section 13.2 addresses enforcement of the CC&Rs. It provides any owner of property in the Medical Plaza "the right to enforce by proceedings at law or in equity all covenants, conditions, restrictions, easements, reservations, liens and charges … imposed by [the CC&Rs]," including the right to "prosecute a proceeding at law or in equity against the person or

7

persons who have violated" the CC&Rs. Section 13.2.c provides that any act, action or omission resulting in a violation of the CC&Rs constitutes "a nuisance, and every remedy allowed by law or equity against an Owner … shall be applicable against every such result."

## PROCEDURAL BACKGROUND

### 1.    The Lawsuit and Injunction

McKissock sued Kashfian and several other defendants who owned suites in the Medical Plaza,[3] claiming they violated the Medical Plaza's CC&Rs by denying McKissock access to their suites to perform the construction work necessary to make his suites usable for his medical practice. McKissock asserted claims for (1) breach of the CC&Rs, (2) "**TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION AND DAMAGES**"; (3) declaratory relief; (4) nuisance; and (5) breach of oral contract.[4]

The claims for breach of CC&Rs and nuisance arise out of allegations that Kashfian obstructed McKissock's access to, and use of, the Medical Plaza's common areas to replace necessary utility connections for McKissock's suites. As for the claim for breach of oral contract, the operative complaint alleges that before McKissock purchased his suites, Kashfian made an oral promise, which he later broke, to allow McKissock access to

---

[3] Although it is unclear from the record when McKissock dismissed the other defendants, Kashfian was the only remaining defendant by the time of trial.

[4] McKissock amended his complaint at trial to add the claim for breach of oral contract.

Kashfian's office to replace utility connections in the surrounding common areas.

Before trial, McKissock filed an application for injunctive relief, seeking an order enjoining Kashfian from obstructing McKissock's access to Kashfian's office "for the purpose of completing construction of [McKissock's] own medical office." McKissock claimed the Medical Plaza's CC&Rs provided him a right to enter Kashfian's office to install utility connections in the surrounding common areas.

The court granted McKissock's application and issued an injunction. The court's order required Kashfian to allow McKissock and his contractors to enter Kashfian's office to install plumbing and other utility lines underneath Kashfian's "Back Work-Room," "Lecture Room," and other areas where the necessary connections might be found. Kashfian had to provide McKissock a key to Kashfian's office and could not unreasonably obstruct McKissock's construction efforts that fell within the scope of the order. Among other things, the order placed limitations on when and how McKissock could conduct his construction and set a six-month deadline for the construction work. Kashfian appealed that order.

## 2. The First Appeal

In *McKissock I*, we reversed the order issuing an injunction. In the first part of the opinion's analysis, we held the court's order was improper because it operated as a permanent, rather than a preliminary, injunction and was a final determination of the merits of McKissock's claims. More specifically, the order resolved a "core issue" in the lawsuit—i.e., whether McKissock has the right to access Kashfian's office to install utility connections in the surrounding common area—and

9

it granted McKissock the ultimate relief he sought—i.e., an order authorizing McKissock to enter Kashfian's office to install those utility connections.

In the second part of the opinion's analysis, we explained that even if the injunction issued by the court wasn't permanent in nature, McKissock had yet to prove he had a " 'clearly established' " right to a mandatory injunction. Specifically, we noted that "because McKissock did not introduce into evidence the plan he intend[ed] to follow in carrying out the construction work authorized by the preliminary injunction, there [was] no evidence that McKissock's suites are currently 'served by' any existing utility connections" as required by section 4.6.a of the Medical Plaza's CC&Rs. We also noted that other provisions of the CC&Rs that provided owners of suites in the Medical Plaza easements through the complex's common areas did not, by themselves, provide McKissock a right to enter Kashfian's office for construction purposes.

### 3. The Trial

After we issued *McKissock I*, Kashfian filed a motion to bifurcate the issues of liability and damages for purposes of trial. Kashfian argued the court, and not a jury, should decide the issue of liability. According to Kashfian, whether McKissock's suites were served by a particular utility connection, and whether Kashfian violated the Medical Plaza's CC&Rs by refusing to allow McKissock access to Kashfian's office to replace a utility connection, were entirely issues of contract interpretation, involving no factual issues for a jury to resolve. McKissock opposed the motion, arguing it was premature to bifurcate the issues of liability and damages because he planned to present

10

extrinsic evidence to show the CC&Rs are susceptible to more than one reasonable interpretation.

The court granted Kashfian's motion in part. Quoting *Equitable Life Assurance Society v. Berry* (1989) 212 Cal.App.3d 832, the court ruled it would "conduct a hearing out of the presence of the jury and permit the parties to introduce conditionally or subject to a motion to strike all available evidence on the issue of the meaning of the [CC&Rs]. If the evidence has the effect of imparting to the [CC&Rs] a meaning of which the instrument is not reasonably susceptible, the evidence will be stricken. The jury [will be] involved only if the court determines that 1) the working of the [CC&Rs] is reasonably susceptible of the interpretation contended for by the proponent of extrinsic evidence, 2) the extrinsic evidence is relevant to prove the proposed meaning, and 3) the credibility of the proponent's parol evidence is disputed."

On the first day of trial, Kashfian requested a bifurcated hearing on the issue of liability before the parties presented evidence to the jury. McKissock argued that the court "did not bifurcate on liability and damages" but instead only granted an evidentiary hearing on the meaning of the Medical Plaza's CC&Rs. McKissock no longer intended to present extrinsic evidence on the meaning of the CC&Rs. McKissock didn't dispute that the CC&Rs were clear and governed the parties' dispute, and he intended to present evidence to the jury "that shows that [Kashfian] breached them."

Later that day, the court held what it called a "bifurcation hearing." The parties didn't introduce any evidence addressing the meaning of the Medical Plaza's CC&Rs. During the parties' arguments, Kashfian asked the court to decide the issue of

11

liability without a jury, insisting it was a purely legal issue whether he breached the CC&Rs. The court took the matter under submission and issued its ruling on the second day of trial. The court noted that McKissock didn't present any extrinsic evidence addressing the meaning of the CC&Rs and ruled that the parties couldn't present that type of evidence at trial. The court also found that the CC&Rs governed "the rights and responsibilities between" owners of property in the Medical Plaza.

Before the parties finished selecting a jury, Kashfian asked whether the court would make a "decision as far as the application of the CC&Rs." The court responded, "[t]he CC&Rs are straightforward. They govern, and the language to me is clear. It governs what you can do. … [¶] Now, the jury will decide whether the language that's there includes what [McKissock] want[s] to do or not. But we're not going to have a bunch of extrinsic evidence in, in that regard, because I've already made my ruling."

On the third day of trial, after the jury was sworn and the parties started presenting evidence, Kashfian asked whether the court intended to instruct the jurors "regarding interpretation of the CC&Rs." The court responded, "I don't have any further instructions. Do you have something in mind[?] … You're supposed to provide all the instructions. You gave me a set that said what it says. If you need something further, you better draft it up." The court instructed the parties to file briefs if they wanted to raise any other issues concerning how the CC&Rs should be interpreted.

On the fourth day of trial, Kashfian filed a "trial brief on the respective roles of court and jury in interpretation of CC&Rs."

12

(Capitalization and bolding removed.) Again, Kashfian urged the court to decide the issue of liability before submitting the issue of damages to the jury. In Kashfian's view, *McKissock I* "already concluded that because [McKissock's suites were] not served by a connection in [Kashfian's office], the CC&Rs did not provide [McKissock] any easement over, or any right to enter, [Kashfian's office] to gain access to a connection." Kashfian argued that because McKissock did not produce any extrinsic evidence revealing an ambiguity in the CC&Rs, *McKissock I* conclusively established that McKissock could not prevail on any claim arising out of Kashfian's alleged violation of the CC&Rs. The court deemed Kashfian's brief a motion for nonsuit and told the parties it would rule on that motion once they finished presenting evidence.

After the parties rested, the court denied Kashfian's brief that it had deemed a motion for nonsuit. The court explained that Kashfian had misjudged McKissock's theory at trial. The court noted that while Kashfian anticipated McKissock would present extrinsic evidence to establish an ambiguity in the CC&Rs that would make them susceptible to a different interpretation from what we applied in *McKissock I*, McKissock instead presented evidence from which a reasonable jury could find Kashfian violated the CC&Rs.

Before closing arguments, McKissock filed an unopposed motion to amend his complaint to add a claim for breach of oral contract. McKissock attached to his motion a proposed third amended complaint and proposed jury instructions addressing breach of the CC&Rs and breach of the alleged oral contract.

One of the proposed instructions identified two theories under which the jury could find Kashfian breached the CC&Rs.

13

Under the first theory, Kashfian refused to give McKissock access to the common area surrounding Kashfian's office "so that McKissock could perform improvements to his suites." Under the second theory, Kashfian made "exclusive use of certain common area in a manner that hindered the exercise of or encroached upon McKissock's rights to the common area."

The court granted McKissock's motion to amend his complaint and later instructed the jury with McKissock's proposed instructions. Kashfian didn't request any specific instructions addressing how the CC&Rs should be interpreted.

Before submitting the case to the jury, the parties stipulated that they were both bound by the Medical Plaza's CC&Rs. The parties also agreed to allow the jury to use a general verdict form. In the verdict form that was provided to the jury, McKissock's causes of action for breach of the CC&Rs and breach of oral contract were combined into a single claim. Thus, the verdict form included only two claims: (1) "Breach of CC&Rs – Breach of Contract"; and (2) "Nuisance."

After the jury started deliberating, it submitted several questions to the court. The jury asked for a copy of CC&Rs for each juror. Kashfian didn't object to providing copies of the CC&Rs to the jury. The jury also requested a definition for the term "appurtenant," and it asked whether "terminating communication [is] a violation of the CC&Rs." The parties agreed on a definition of "appurtenant," which the court provided to the jury. When the court asked the parties how it should respond to the jury's question about terminating communication, Kashfian's counsel responded, "Our position is the court needs to interpret the CC&Rs, not the jury." Kashfian didn't object, however, when

14

the court told the jury that terminating communication can constitute a violation of the CC&Rs.

The jury found in McKissock's favor on both claims included in the verdict form. The jury awarded McKissock $1,200,000 in economic damages and $525,000 in non-economic damages. The court entered judgment in McKissock's favor.

Kashfian appeals.

## DISCUSSION

Kashfian raises a litany of arguments, most of which revolve around a single premise: the court erred by allowing the jury to decide the issue of liability on McKissock's claims. As we explain, Kashfian's arguments lack merit.

1. **Kashfian hasn't demonstrated any prejudicial error affecting the jury's verdict on McKissock's claim for breach of the CC&Rs and the oral contract.**

Kashfian first contends the court, and not the jury, should have decided whether he was liable for violating section 4.6.a of the CC&Rs. Specifically, Kashfian argues that once McKissock decided not to present extrinsic evidence to show the CC&Rs were reasonably susceptible to a different interpretation from the one we applied in *McKissock I*, the court was bound by our decision in that appeal to find McKissock didn't have a right to enter Kashfian's office to repair, replace, or maintain utility connections. We are not persuaded.

As a preliminary matter, Kashfian overstates our holding in *McKissock I*. Nothing in that opinion states, let alone suggests, that under a plain reading of section 4.6.a of the CC&Rs, McKissock could never prove he had a right to enter Kashfian's office to repair, replace, or maintain utility connections serving

15

his suites. Rather, as we explained in that opinion, McKissock hadn't introduced any evidence by the time of the hearing on the preliminary injunction to support a finding that he had a "clearly established" right to enter Kashfian's office. But we never held that, as a matter of law, McKissock didn't have that right or that he was precluded from presenting evidence at trial to prove he had that right.

Indeed, to read *McKissock I* the way Kashfian does would turn the rationale of that opinion on its head. As we explained in the first part of the opinion's analysis, the challenged order was improper because it operated as a permanent injunction that decided the merits of McKissock's claims at a preliminary stage of the lawsuit. (See *Yee v. American National Ins. Co.* (2015) 235 Cal.App.4th 453, 457–458.) Kashfian would have our opinion do the same thing. That is, Kashfian insists *McKissock I* decided the merits of the lawsuit in his favor. Not so. It simply concluded that, at the time the court issued the challenged order, McKissock had not met his burden to show he was entitled to the extraordinary relief of a mandatory injunction.

And, as we explained in *McKissock I*, a party seeking a mandatory injunction faces a heightened burden of proof. Specifically, we noted that a mandatory injunction is "rarely granted" at a preliminary stage of a lawsuit and is subject to stricter review on appeal than a prohibitory injunction, and entitlement to the mandatory injunction must be "clearly established." (*Teachers Ins. & Annuity Assn. v. Furlotti* (1999) 70 Cal.App.4th 1487, 1493; *Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 448.) Thus, the burden for establishing the right to a mandatory injunction at a preliminary stage of the lawsuit is much greater than the burden for proving

16

liability for a claim of breach of contract or nuisance at trial. (Compare CACI No. 200 [a plaintiff need only prove a necessary fact is "more likely to be true than not true"]; and *Weiner v. Fleischman* (1991) 54 Cal.3d 476, 483 ["The general rule in this state is that '[i]ssues of fact in civil cases are determined by a preponderance of testimony.' "]; with *Davenport*, at p. 446 [the granting of a mandatory injunction before the rights of the parties have been " 'definitely ascertained' " is not permitted " 'except in extreme cases' "].) That we concluded McKissock didn't satisfy the higher burden of proof necessary to obtain a mandatory injunction does not mean we held that he couldn't later prove by a preponderance of the evidence at trial that he had a right to enter Kashfian's office under section 4.6.a of the Medical Plaza's CC&Rs.

The bottom line is that by the time of trial, there were disputed issues of fact concerning Kashfian's potential liability for violating section 4.6.a of the CC&Rs. Specifically, the parties presented conflicting evidence addressing whether McKissock's suites were served by a utility connection and whether McKissock had a right to enter Kashfian's office to repair, replace, or maintain that connection. It is well-settled that a plaintiff is entitled to a jury trial on a claim for breach of contract. (*Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671 ["[A] suit to recover damages for fraud or breach of contract is an action at law in which a right to jury trial ordinarily exists."].) And where, as here, the parties submit a general verdict form to the jury, the jury is responsible for making the ultimate determination of liability. (See *Chavez v. Keat* (1995) 34 Cal.App.4th 1406, 1409 [a general verdict requires the jury to not only make findings of fact, but also to determine which party

17

prevails on a particular claim or group of claims]; see also Code Civ. Proc., § 624 ["A general verdict is that by which [the jury] pronounce[s] generally upon all or any of the issues, either in favor of the plaintiff or defendant; a special verdict is that by which the jury find[s] the facts only, leaving the judgment to the Court."].) Consequently, the court did not err in allowing the jury to determine whether Kashfian breached section 4.6.a of the CC&Rs.[5]

To the extent Kashfian contends the court erred by not instructing the jury that section 4.6.a of the CC&Rs required McKissock to prove his suites had a currently, as opposed to a formerly, existing utility connection that required access to Kashfian's office to maintain, repair, or replace, he did not preserve that argument for appeal. In a civil case, the parties are responsible for proposing complete and comprehensive instructions that address their theories of the case. (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1130–1131 (*Metcalf*), quoting *Agarwal v Johnson* (1979) 25 Cal.3d 932, 950–951.) If a party fails to provide proposed instructions addressing a particular theory, the court has no duty to instruct on that theory on its own motion. (*Metcalf*, at p. 1131.)

In the middle of trial, the court advised Kashfian that if he wanted the court to instruct the jury with a specific interpretation of the CC&Rs, he needed to propose an instruction with the language he wanted the court to use. Kashfian never did so. Nor did he object to any of the instructions the court provided

---

[5] We also note that Kashfian doesn't develop any arguments challenging the sufficiency of the evidence to support the jury's finding that he breached section 4.6.a of the CC&Rs.

the jury. He therefore can't complain on appeal that the court erred by failing to instruct the jury with an instruction he never proposed. (*Metcalf, supra*, 42 Cal.4th at p. 1131 [a party's "failure to request any different instructions means he may not argue on appeal the trial court should have instructed differently"].)

For similar reasons, Kashfian hasn't preserved his challenge to the court's decision to tell the jury that terminating communications is a violation of the CC&Rs. After it received the jury's question on that issue, the court asked Kashfian how he wanted the court to respond. Kashfian didn't propose any response but instead told the court it should come up with the answer on its own. Because Kashfian doesn't point to any part of the record showing he objected to the court's response, he has forfeited his challenge to that response on appeal. (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1048 ["A defendant may forfeit an objection to the court's response to a jury inquiry through counsel's consent, or invitation or tacit approval of, that response."].)

Kashfian also can't complain that the court allowed the claim for breach of oral contract to go to the jury. Kashfian never opposed McKissock's motion to amend the complaint to add that claim. Nor did Kashfian ask the court to strike that claim. Kashfian also never objected to any of the jury instructions addressing breach of contract, nor did he propose any instructions addressing a particular defense or theory that would be applicable to the claim for breach of oral contract. (*Metcalf, supra*, 42 Cal.4th at p. 1131) And to the extent Kashfian contends McKissock failed to prove the existence of the oral contract, Kashfian doesn't develop any arguments challenging the sufficiency of the evidence to support that claim. (*Placer County*

19

*Local Agency Formation Com. v. Nevada County Local Agency Formation Com.* (2006) 135 Cal.App.4th 793, 814 ["We need not address points in appellate briefs that are unsupported by adequate factual or legal analysis."].)

In any event, Kashfian can't show he was prejudiced by the court's decision to allow the jury to determine whether he breached the oral contract or violated section 4.6.a of the CC&Rs because he agreed to allow the jury to use a general verdict form. When a jury returns a general verdict on multiple causes of action or a claim involving multiple theories, we presume the jury found in the prevailing party's favor on each cause of action and theory. (*Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1155, 1157; *Willdan v. Sialic Contractors Corp.* (2007) 158 Cal.App.4th 47, 57 (*Willdan*).) A general verdict will be upheld if *any one* of the prevailing party's claims or defenses is (1) supported by substantial evidence, and (2) unaffected by error, despite the possible insufficiency of the evidence as to the party's other claims or defenses. (*Tavaglione*, at p. 1157.)

The verdict form in this case combined McKissock's causes of action for breach of CC&Rs and breach of oral contract into a single claim styled as "Breach of CC&Rs – Breach of Contract." As we explained above, the court instructed the jury that it could find Kashfian liable for breaching the CC&Rs if it found (1) Kashfian wrongfully denied McKissock access to Kashfian's office, or (2) Kashfian hindered McKissock's use of the common area by making exclusive use of that space. The second form of breach is based on independent factual and legal theories from the first. Specifically, the second form arises out of section 2.2.b of the CC&Rs, and it is based on evidence that Kashfian encroached on or hindered McKissock's right to use the parties' shared

20

common area by overcrowding that space with his own pipes, utility lines, and duct work and eliminating part of that space by overbuilding his office. Kashfian doesn't develop any arguments challenging the court's decision to allow the jury to determine whether he violated that provision of the CC&Rs. Nor does he contend the jury otherwise erred in finding he breached section 2.2.b of the CC&Rs.[6] Because the parties used a general verdict form, we must presume the jury found in McKissock's favor on the claim for "Breach of CC&Rs – Breach of Contract" under the theory that Kashfian violated section 2.2.b of the CC&Rs by overcrowding, and eliminating part of, the common area he shared with McKissock. (*Willdan*, *supra*, 158 Cal.App.4th at p. 57.)

2.    **Kashfian hasn't otherwise identified any error requiring reversal of the jury's verdict.**

Kashfian next contends the court prejudicially erred because it did not instruct the jury that McKissock's claim for nuisance, as pled in the operative third amended complaint, arose out of section 13.2.c of the CC&Rs, which defines an actionable nuisance as a violation of any "covenant[], condition, restriction, easement, reservation, lien or charge" contained in the CC&Rs. Kashfian has forfeited this argument because he never objected to the instructions provided by the court or

---

[6] Although we noted in *McKissock I* that section 2.2.b did not provide McKissock a right to access Kashfian's office, nothing in the opinion addressed that section's prohibition against encroaching on or hindering another owner's right to use the Medical Plaza's common areas.

proposed any instructions addressing the nuisance claim. (*Metcalf*, *supra*, 42 Cal.4th at p. 1131.)

We also reject Kashfian's argument that he wasn't liable for nuisance because the CC&Rs didn't impose any duty on him to act, or refrain from acting, in a particular manner. As we explained above, section 2.2.b of the CC&Rs prohibits an owner of property in the Medical Plaza from "hindering the exercise of or encroaching upon" any other owners' rights to use the building's common areas. Kashfian fails to cite any authority, or otherwise develop any cognizable argument, to support the proposition that section 2.2.b's language didn't impose upon him a duty not to hinder McKissock's use of the Medical Plaza's common areas. (See Cal. Const., art. VI, § 13 [a judgment is presumed correct]; *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799 [the appellant bears the burden to show the judgment is erroneous and, as part of that burden, must support each claim with "reasoned argument and citations to authority"].) Because Kashfian has not developed this argument, we need not address it any further.

Finally, Kashfian argues McKissock's counsel committed misconduct while cross-examining Kashfian. Specifically, Kashfian contends McKissock's counsel misrepresented the nature of the order granting the preliminary injunction that was reversed in *McKissock I*. This argument is forfeited.

During cross-examination, McKissock's counsel used a copy of the preliminary junction order to refresh Kashfian's recollection about a purported agreement the parties made to allow McKissock to perform construction in Kashfian's office so long as McKissock agreed to certain conditions and limitations that Kashfian wanted to impose on the scope and nature of that

work. McKissock's counsel didn't tell the jury that the document he showed Kashfian was the reversed order, but instead he referred to it as a "proposal" that Kashfian received from McKissock, which had been approved by the court. McKissock's counsel then asked Kashfian several questions referencing the contents of the order and about whether Kashfian agreed that the conditions imposed by the order were the same as those he wanted to impose on any work McKissock had intended to perform inside Kashfian's office.

Kashfian didn't object during this line of questioning but instead waited until after his cross-examination to request a meeting at sidebar. During that meeting, Kashfian argued that McKissock's counsel's questions violated a prior stipulation between the parties not to discuss our decision in *McKissock I* in front of the jury. Kashfian requested permission to refer to that decision during his redirect examination, but he never asked the court to strike any of the questions referring to the reversed order or any of his testimony responding to those questions. Nor did Kashfian ask the court to admonish the jury about the challenged line of questioning.

The court ruled that Kashfian was "entitled to clarify for the record" that the order granting the preliminary injunction had been reversed. During his redirect examination, Kashfian testified that the document McKissock's counsel had referred to as a "proposal" was in fact the order granting McKissock a preliminary injunction and that the order was later "invalidated" on appeal.

Generally, a party cannot complain on appeal that an attorney committed misconduct at trial unless that party timely objected to the misconduct *and* requested that the jury be

admonished. (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1411–1412 (*Rayii*).) "The purpose of these requirements is to allow the trial court an opportunity to remedy the misconduct and avoid the necessity of a retrial; a timely objection may prevent further misconduct, and an admonition to the jury to disregard the offending matter may eliminate the potential prejudice. The failure to timely object and request an admonition waives a claim of error unless the misconduct was so prejudicial that it could not be cured by an admonition [citations], an objection or request for admonition would have been futile [citation] or the court promptly overruled an objection and the objecting party had no opportunity to request an admonition [citation]." (*Id.* at p. 1412.)

As we noted above, Kashfian never asked the court to admonish the jury about, or to strike any portion of, the challenged line of questioning. Instead, Kashfian accepted the court's ruling that he could tell the jury that the document McKissock's counsel characterized as a court-approved "proposal" was in fact a prior order issued by the trial court that was later reversed on appeal. Because Kashfian makes no effort to explain why a request for an admonition would have been futile or why McKissock's counsel's line of questioning was incurable, he has forfeited any argument on appeal concerning that line of questioning. (*Rayii*, *supra*, 218 Cal.App.4th at p. 1412.)

## DISPOSITION

The judgment is affirmed. McKissock shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.